## MARTIN G. BARBER v. THE TOWN OF ESSEX.

*Variance. Liability of towns for insufficiency of highways. Burden of proof. Negligence. Travelling in the night.*

Where a part of a public highway was taken and occupied by a railroad company for the accommodation of its railroad, and the travel turned upon a new road, built by the railroad company, to be used in lieu of the old one, and, in a suit to recover compensation for an injury occasioned by its insufficiency and want of repair, the declaration described the highway by its termini beyond the points of connection between the old and new roads, so that the description was applicable to either, and there was no proof that the railroad company had pursued their charter provisions in making the alteration, or that the old road had been discontinued in fact, by an abandonment of it by the proper authorities, or by long non-user ;— *it was held,* that there was no variance between the declaration and the testimony, which showed the injury to have been sustained upon the old road, which had not been used for public travel for from two to four months prior to the time of the injury, in consequence of the alteration so made by the railroad company.

The declaration averred that a public highway was "greatly insufficient and out of repair, and was then and there full of deep holes, excavations and pits", and that the plaintiff when travelling on said highway, was injured "by reason of said insufficiency and want of repair". *Held,* that the general allegations of insufficiency, &c., were not necessarily confined to the specific defects enumerated, and that there was no fatal variance between such a declaration and the proof that the real defect in the highway was the want of proper obstructions to prevent the traveller from driving or falling into the excavations and pits.

Where a new road is opened for the purpose of turning the travel from the former road which has become defective, insufficient, and dangerous to travel upon, it is the duty of the town, in which the highway is, to erect and maintain such muniments or obstructions upon the old road, as to apprise travellers that it is not to be used, if the road is not reasonably safe without them ; and if the town omits its duty in this respect, it is liable for injuries sustained by individuals in consequence thereof.

If a railroad company make such an alteration, yet, as the primary obligation to keep roads in a safe condition rests upon the town, the town is responsible to travellers for any omissions of the railroad company to erect and maintain the necessary muniments and obstructions upon the old road.

In an action to recover for injuries sustained in consequence of the insufficiency of a public highway, the plaintiff must show *prima facie* that he was, at the time, in the exercise of proper care, or rather, that he was not guilty of negligence; and this being rather a negative proposition, after such negative evidence as may be presumed to be in the power of the party is shown, the burden of proof is changed and thrown upon the other side.

Merely travelling upon the highway, with a team, in the night time, is not sufficient to require of the plaintiff a fuller showing upon this point,—and the *onus* is on the defendant, to show that the night was so dark as to render it unsafe to travel, rather than on the plaintiff to show that it was light enough to render it safe.

Questions of negligence, where the law has settled no rule of diligence, cannot be determined as matter of law.

TRESPASS ON THE CASE, to recover for injuries alleged to have been occasioned by the insufficiency and want of repair of a public highway. The declaration alleged the existence, on the 28th of September, 1850, of a public highway, leading from near the inn of H. B. Stanton, in Essex, to the north line of Essex, which it was the duty of the defendants to keep and maintain in repair, " which highway was then and there greatly insufficient and out of " repair, and was then and there full of deep holes, excavations, " and pits," and that the plaintiff was travelling upon said highway, " when, by reason of said insufficiency and want of repair in " said highway", he was precipitated and thrown into said pits and excavations, and thereby greatly injured; and, (in the second count,) that on the 28th of September, 1850, there was in the town of Essex a certain other public highway, which it was the duty of the defendants to keep and maintain in repair, which was " insufficient and out of repair, by being full of pits and excavations", and that the plaintiff was travelling upon said highway, " when, by reason " of said insufficiency and want of repair", he was thrown into said pits and excavations, and greatly injured, &c.

Plea, the general issue, and trial by jury, November Term, 1854, — PECK, J., presiding.

The evidence tended to show, that some months previous to the time of the alleged injury, there had been a public highway in the town of Essex, leading from H. B. Stanton's inn northerly to the town of Colchester, and that the Vermont & Canada Railroad Company had, at the place of the accident, made an excavation or cut across the highway six or eight feet deep, which they occupied with their railroad, and that at, or about the time of making this excavation, they made a road for the public travel which left, and turned at nearly a right angle from the former highway about fifteen rods south of the cut, and one and a half rods west from their railroad, and crossed said railroad by a bridge, from which the new road run northerly on the east side of the railroad and entered the old road a few rods north of the cut; that after the completion of this new road and bridge, which was from two to four months before the accident, the public travel was diverted to it and ceased to pass over the old road :— that on the west side of the old road, about six rods north of the place where the new one separated

from it, a road turned off through a pair of bars and led to a house standing about fifty rods back in the lot, where one Ellis resided, and that about half way between the new road and the Ellis road, a highway, leading to Burlington, turned off from the west side of the old highway; and that, at the time the cut was made, the man who made it put a post and bars across the old road two or three rods north of the Ellis road; that these were soon after removed by a person unknown, and were replaced by the inhabitants and taken away by persons unknown several times previous to the accident, but that during a great portion of the time and for two or three days previous to the injury, no obstruction existed, except at the place where the new road turned to pass over the bridge, it was raised about two feet and had a sharp descent on its northerly side, but was of a soft soil, and that at the place where obstructions had been put up and taken away, a common sized rail lay across the road, the soil being sandy at that place.— That between seven and eight o'clock on the evening of the accident, the plaintiff was travelling, in company with one Courts, with a horse and wagon, upon the highway from Stanton's north, and continued on in the old road and drove into the cut made by the railroad company; that it was at that time so dark that an object could not be discovered at a distance of more than twelve feet. The plaintiff's evidence tended to prove that he and Courts used due caution and care in driving, that they drove slowly and did not notice the bridge or new road, or discover that they were not on the usually travelled highway until they drove into the cut.

There was no evidence tending to show that the old road, between the new one and the cut, had been discontinued according to the statute, or that the highway surveyor of that district, or the selectmen of the town, had any direct notice that the obstructions placed across the path had been removed, or that they had themselves caused barriers to be put up or maintained; nor was there any evidence tending to show any authority in the railroad company to make said cut, or to show any location of their railroad, except that they, in point of fact, made and used it there.

The defendants insisted that the evidence did not support the declaration, and that there was a variance between the allegations

and the proof; but the court held that the evidence tended to support the declaration, and that there was no such variance as to withdraw the case from the jury.

The defendants, among other things, requested the court to charge the jury that the burden of proof was upon the plaintiff, to show that he was exercising due care at the time the accident occurred, and that the defendants were under no legal obligations to put up obstructions, to prevent travellers from leaving the common highway and going into paths where travelling would probably be attended with injury.

The court charged the jury that the railroad company had the right, under their charter, to make the cut across the highway and turn the travel over the new road, and if they found that the road was reasonably safe for travellers without any muniments or obstructions in the old road, to apprise travellers that it was not to be used or had been abandoned, that the defendants were not liable;— but that if they found that, without such muniments or obstructions, the road was not reasonably safe, by reason of exposing travellers to be led over the old road into the railroad cut, then it was the duty of the town to have erected barriers, or something to apprise and notify travellers,— that all that was required of the town, in this respect, was to use ordinary care and diligence in erecting and maintaining such barriers, and if the town had performed this duty, they were not liable, even if the jury should find that such barriers were necessary; and if this duty had not been performed by the town, but had been performed by others, it would have the same effect as though performed by the town;— that if they found that such barriers or obstructions were necessary and had not been maintained, and the town had not used ordinary care and diligence in putting up and maintaining them, and the duty had not been performed by others, and that the injury sustained by the plaintiff was occasioned by this neglect on the part of the town, then, upon this part of the case, the plaintiff would be entitled to recover, unless a want of ordinary care and prudence in the plaintiff or Courts caused or contributed to the injury; but that the mere fact, that the officers of the town did not know that the barriers were down at the time of the injury, would not absolve the town from liability, if there was a want of ordinary care in their

6

not knowing it. The jury were further instructed, that there was no rule of law which forbade a person travelling in the night, but that there were cases where a jury might and ought to find that the darkness was such that it would be imprudent to travel,—that the question, whether prudent or not, depended on the occasion, the darkness, the state or condition of the road, and other circumstances attending each particular case; and that it was not for the court, but for the jury, to say whether or not it was a want of ordinary care and prudence in the plaintiff to travel during the evening upon which this accident occurred.

Verdict for the plaintiff. Exceptions by the defendants.

*J. Maeck* for the defendants.

1. There was a variance between the declaration and the proof. The declaration counts upon the insufficiency of the road bed, the proof showed that the road, as made and travelled, was good enough, but that the defendants had not put up barriers to prevent the plaintiff ·from going out of the road into another, by following which, he was injured. There were not two roads from the bridge north which the town was obliged to keep in repair ; and the town would have been liable for an injury occasioned by the insufficiency of the new road, for they had made it their road. *Batty* v. *Dux-bury*, 24 Vt. 163.

2. At common law, a person injured by reason of a road in a town being out of repair, had no remedy against such town. *Mower* v. *Leicester*, 9 Mass. 247. *Farnum* v. *Concord*, 2 N. H. 393. The whole liability of the defendants arises from ch. 23 § 31 Comp. Stat. p. 180, which makes towns liable only for injuries occasioned by the insufficiency or want of repair of the highway in the towns. Here the road bed was sufficient for the protection and safety of the traveller, if he kept within it; but the accident occurred beyond the line not merely of the travelled part of the road, but beyond the limits of the road itself, and the recovery was had because the town did not do something beyond such limits. This is imposing a duty upon the town beyond what the statute has done. In other states, under statutes similar to ours, it has been held that if a sufficient road bed was kept clear of obstructions, it was all the law required, and, if there was a departure from it and an accident

happened beyond the boundary of the travelled path, the town was not responsible, even though the road bed was not passable. *Farnum* v. *Concord*, 2 N. H. 393. *Smith* v. *Wendell*, 7 Cush. 498. *Howard* v. *North Bridgewater*, 16 Pick. 189. *Howland* v. *Vincent*, 10 Met. 371. *Tisdale* v. *Norton*, 8 Met. 388.

3. The facts sufficiently proved an abandonment of the old road, and the jury would have so found, if properly instructed. *Tinker* v. *Russell*, 14 Pick. 279. *State* v. *Alburgh*, 23 Vt. 262.

4. The burden of proving that the plaintiff was in the exercise of proper care was upon him, and the jury should have been so instructed. *Adams* v. *Carlisle*, 21 Pick, 146. *Toustellot* v. *Rosebrook*, 11 Met. 461. *Cassedy* v. *Stockbridge*, 21 Vt. 391.

*A. B. Maynard* and *Geo. F. Edmunds* for the plaintiff.

1. The claim that the proof did not support the declaration is not sustained, the road where the injury occurred never having been legally discontinued by the town, nor the new road constructed by the railroad company adopted.

2. The charge of the court is sustained by the whole current of decisions on this subject, and was in strict accordance with the charge of the court in *Willard* v. *Newbury*, 22 Vt. 458.

3. The burden of proving that the plaintiff was not guilty of negligence, in the first instance, was clearly not upon him. He having proved the negligence of the defendants and the consequent injury, it was for the defendants to overcome that, by proving that the plaintiff's negligence contributed to the result. *Godefroy* v. *Jay*, 7 Bing. 413. 20 C. L. R. 183. The charge of the court, in this respect, was sufficient. *Morse* v. *Crawford*, 17 Vt. 499. Negligence is never presumed in the absence of proof. *Williams* v. *East India Co.*, 3 East. 192.

The opinion of the court was delivered by

REDFIELD, CH. J. I. It is objected, that there is a variance between the declaration and the proof, in the present case. That will depend upon the construction we give the evidence, to some extent, at least. To us, it seems difficult to find any satisfactory evidence of the discontinuance of the original highway. There is

nothing to show that the railroad company had pursued the charter provisions, to substitute the road built by them for the old road. And till that is done, the town certainly are not obliged to recognize the change. In England it has been held, that a railway may be indicted for a nuisance, for obstructing an old highway, till they have, in a perfect and legal manner, made the statute substitute, and that this is the proper mode of compelling them to do their duty in the premises. Whether we should so hold here, or not, it is certain they have no right to obstruct the ancient highway, but in the mode, and upon the conditions, prescribed by the legislative power of the state. This they are not shown to have done in the present case. The highway is not, then, discontinued in that mode. And there is no such discontinuance, in fact, as will be effectual. The proceedings of the railroad, so far as appears in the case, then, are mere wrongs. And there is no such acquiescence of the public in the case as will be of any force, as in the case of *Tinker* v. *Russell*, 14 Pick. 279, cited in argument, and, clearly, there was no abandonment of the ancient highway by the proper authorities, or by long non-user. The town and the public, then, have the right to regard it, as still in legal existence, notwithstanding its treatment by the railroad company, and this obviates all variance.

And then, the first count in the declaration is not necessarily confined to the defects in the old road. The terms used are general, "greatly insufficient and out of repair, and was then and there full of deep cuts", &c. describing such road by limits beyond the deviation, and this is applied to the whole road, and if the new portion had legally become a portion of the highway, and for many purposes it certainly had, as was held in *Batty* v. *Duxbury*, and in other cases, and if the real defect was the want of proper obstructions, at the point of departure from the ancient highway, still these general allegations of want of repair are not necessarily confined to the specific defects enumerated, as they are in the second count, where the form of declaring is different. And it is obvious that towns may be required to fence travellers out of the old highway, when they have broken it up recently, and provided a new one, without involving the absurdity of requiring them to fence travellers into the road, in all cases. So that, upon either ground, there is no fatal variance.

II. In regard to the liability of the town, this case is certainly much stronger than that of *Willard* v. *Newbury* 22 Vt. 458, although, in its facts, in many respects, very similar to that case. But there, the railroad and the town had agreed upon a temporary substitute for the old highway, and that was consequently, for the time, discontinued. There, too, the highway was, at the time, in the legal custody and control of the railroad company, and sufficient obstructions to guide travellers out of the old highway, had been put up and maintained, till about the time of the injury, and were then left down by the railroad, after the path was mainly filled with large blocks of granite. Still the town was held liable, because the primary obligation to keep the roads in safe condition, rested upon towns, and if they trusted to the railroad company, they thereby made them their agents for that purpose, and must be responsible to travellers for their omission to keep up the proper fences, to exclude travellers from the old highway. That case seems fully to control the present, in regard to the neglect of the town.

III. In regard to the burden of proof being upon the plaintiff, to show that he was, at the time, in the exercise of proper care, it is undoubtedly true, that the plaintiff is bound to make out a *prima facie* case upon this point, as well as others. But this is rather a negative than an affirmative proposition. The requisite is rather that he was not guilty of negligence, than that he should prove any positive diligence. And, as in other negative propositions, which it is often incumbent upon a party to establish, as where suits or indictments are brought for omissions of duty, after such negative evidence of the alleged fact, as may be presumed to be in the power of the party, is shown, the burden of proof is changed upon the other side. That appears to have been the case here. The plaintiff's case showed an acknowledged case of no negligence on his part, except in regard to darkness. There seems to have been no question in regard to plaintiff's want of care, except in regard to the darkness of the night. And unless it can be assumed, as a general proposition, that, ordinarily, one is not allowed to travel the highway with a team in the night time, and so it is incumbent upon one who does thus travel, and seeks redress for injury of towns, to show affirmatively that the night was light enough to render it safe, then it is difficult to throw the *onus* of proof upon the plaintiff here.

And we think it must be regarded as the general right of every one to travel in this mode, in the night time; and it was for the defendant, if there is no other testimony to show want of ordinary care, to prove that the night was so dark as to render it unsafe to travel.

And the proof of darkness, in the present case, seems to us not to have called upon the court to rule, as matter of law, that it was unsafe to travel. Questions of negligence, where the law has settled no rule of diligence, can never be determined as matter of law — except where the testimony is all one way. If there is no testimony tending to show negligence, then it may be determined by the court that there was no negligence. And that seems to us more the character of the proof here, than what was claimed by defendant. Or if the testimony is uncontradicted, and makes a clear case of negligence, it becomes matter of law only. But it must certainly be darker than it was shown to be that night, to render it presumptuous for one to travel in the cautious mode the plaintiff seems to have been doing.

Judgment affirmed.