NATHAN GLIDDEN v. THE TOWN OF READING.

*Highways.*

The plaintiff being blind and ignorant of the character of the road, and the night so dark that nobody could see him, heard a team coming down the hill towards him, and left the travelled part of the road to secure his personal safety and in so doing stepped over a bank wall and received the injury complained of. *Held,* that he was justified by necessity in leaving the travelled path, and if in so doing he acted with reasonable care and prudence he cannot be said to have contributed to his own injury.

When a traveller receives an injury out of the travelled path, it is not necessary to a recovery that he should have been "forced out by unavoidable accident or circumstances beyond his control." Where he leaves voluntarily but from a reasonable fear of injury if he remain, it is in the eye of the law a leaving from necessity.

*Held,* that under the circumstances of the case the court correctly instructed the jury that "the plaintiff had a right to presume that the road was reasonably safe in its surface, margin and muniments."

As it did not appear that the persons riding with the plaintiff were in his service or employment, or owed any duty to, or had any care of him, either permanent or temporary, the defendant town had no right to have the jury charged that the plaintiff could not recover if any want of care or prudence on the part of these persons contributed to his injury.

ACTION on the case for injury occasioned by the insufficiency of an highway. Plea, the general issue, and trial by jury, May Term, 1864, BARRETT, J., presiding. The obligation of the town to maintain the highway in question and the giving of the statute notice of the injury were conceded.

The plaintiff proved that on the 27th day of December, 1862, between seven and eight o'clock in the evening, he was passing northerly from Felchville, in the town of Reading, over the highway in question with a wagon drawn by two horses, in company with a young man by the name of Nichols and two women; that about half a mile northerly from Felchville they came to a hill; that the plaintiff was blind and had been for some years, and Nichols drove—the plaintiff sitting upon the front seat of the wagon on the left hand side; that after going a little distance up the hill, the plaintiff had occasion to pass water and requested Nichols to stop the horses and let him get out; that the plaintiff did get out on the left hand side of the wagon in the road and stood there without moving materially

from the place passing water; that the night was extremely dark, so dark that persons could not be seen as they passed in the road; that Nichols drove the team on up the hill about two rods and stopped again, waiting for the plaintiff; that while so waiting he heard another team coming down the hill from the opposite direction; that for the purpose of avoiding that team the plaintiff started to get out of the road upon the left hand side, which was the west side of the road and the same side upon which the plaintiff was standing; that for this purpose he put his cane before him with the point resting upon the ground, and in that manner felt his way before him, moving his cane about as he walked to find obstructions if there were any; that he found everything smooth and walked along and put his cane as he supposed into the ditch and either stepped over or fell over the bank wall of the road, which, at that point was some eight or ten feet in height from the ravine below, having no railing or muniment thereon, and thereby received severe injury; that he was never upon that road before and knew nothing about it; that he intended to get out of the travelled road into the ditch on the west side of the road to avoid being run over; that from the place where he was standing he did not move more than three or four feet before he fell over the bank wall, and that it was perfectly smooth to the outer edge of the wall; that the point of his cane went over the edge of the wall, and that he was endeavoring to feel with it for the bottom of the ditch, but could not tell whether in so doing he lost his balance and fell over or whether he stepped over; that he could not tell how fast the approaching team was coming nor how far it was from him when he first heard it approaching; that he did not speak to those in his own wagon, nor did they speak to him after he got out of the wagon, before he went over the bank.

It appeared that the road, at the point in question upon the hill and for some distance above and below that point was of sufficient width and sufficiently smooth for all purposes of travel. For a number of rods up the hill there was a bank wall on the west side of the road, beginning at the foot of the hill and extending northerly, and varying from a foot or two to fourteen or fifteen feet in height as it extended northerly, and that there was no railing or other muniment on the top of the wall.

The plaintiff's evidence tended further to show that the road was on the same level with the top of the bank wall and was perfectly smooth to the bank wall and that some earth had worked into the wall and that the main travel came within about four feet of the edge of the wall, and that some wheel tracks were within one foot of the wall; that when the plaintiff got out of the wagon Nichols drove the team a few feet and stopped, and when he heard the wagon coming down the hill he gave the reins to his sister in the wagon and got out and went back to see the plaintiff; that Nichols groped round trying to find the plaintiff, without success until after the other wagon had passed, when he heard a rustling down the bank and got down there and found the plaintiff and helped him round into the road and up to and into the wagon.

The only question made by the defendant in the case was as to whether the plaintiff exercised ordinary care under the circumstances.

The defendant presented written requests to the court to charge the jury, which are sufficiently set forth in the opinion of the court, together with the charge in respect thereto. To the refusal of the court to charge as requested the defendant excepted. Verdict for the plaintiff.

*Gilbert A. Davis*, for the defendant.

1st. Towns are not liable for injuries happening upon the margin of the highway to persons who *voluntarily* and *without necessity* diverge from the travelled road. *Rice* v. *Montpelier*, 19 Vt. 474; *Raymond* v. *City of Lowell*, 6 Cush. 524; *Kellogg* v. *Northampton*, 4 Gray, 65; *Shepardson* v. *Coleraine*, 13 Met. 55; *Smith* v. *Wendall*, 7 Cush. 498. 2d. The court erred in instructing the jury that the plaintiff had a right to presume that the road was reasonably safe in its surface, margin and muniments. 3d. The plaintiff could not recover if there existed any negligence (contributing to the accident) on the part of himself and his attendants. *Kidder* v. *Dunstable*, 9 Gray, 104; *Rowell* v. *City of Lowell*, 7 Gray, 100; *Wright* v. *Malden R. R.*, 4 Allen, 283; *Holly* v. *Boston Gas Light Co.*, 8 Gray, 123; *Hartfield* v. *Roper*, 21 Wend. 615. The plaintiff in passing to the *left* instead of the *right*, violated his legal duty, and the jury should have been instructed in accordance with the defendant's 4th request. See also

*Adams* v. *Rivers*, 11 Barbour 393 ; *Stickney* v. *Salem*, 3 Allen, 374 ; *Richards* v. *Enfield*, 13 Gray 344.

*Converse & French*, for the plaintiff.

The opinion of the court was delivered by

ALDIS, J. The requests to charge which the court denied were the 3d which claimed that the plaintiff could not recover, " if he voluntarily went out of the travelled part of the road ;" the 4th, " if he went to the left hand side of the road voluntarily" to avoid meeting a team coming from the opposite direction ; 5th, " if he voluntarily went to the margin of the road intending to leave the travelled part ;" and 6th, " if the injury happened outside of the travelled path and the plaintiff was not forced out of the travelled path by unavoidable accident or circumstances beyond his control by the exercise of common and ordinary prudence." The first three of these requests suppose that the plaintiff could not recover if he voluntarily went out of the travelled path. We must therefore consider how he came to go out of the travelled path, and whether his reason for so going out justify him. He was blind—the night so dark that nobody could see him. He heard a team coming down the hill towards him and which he might reasonably think would be very likely in the darkness to run over him if he remained in the travelled path. He left the road from a reasonable sense of danger, to secure his personal safety by getting out of the road so as to be safe. If he remained anywhere in the road he would be in danger. He could not tell in what direction or over what part of the road the coming team would pass ; nor how near it was to him. They could not see him to avoid him, on account of the darkness ; nor could they tell in what part or on what side of the road they were driving. His only safety was to get clear out of the road. In voluntarily going out of the travelled path he did what every man so situated would have done from the instinct of self preservation. He was fully justified by necessity in so doing. If in doing so he acted with reasonable care and prudence he cannot be said to have contributed to his own injury. None of the cases cited by the counsel for the defence conflict with this view.

In *Rice* v. *Montpelier*, 19 Vt. 474, the traveller diverged from the road, not from any necessity, but for his own convenience. In the

cases cited from Massachusetts, *Shepardson* v. *Colerain*, 13 Met. 55 ; *Smith* v. *Wendell*, 7 Cush. 498, and *Kellogg* v. *Northampton*, 4 Gray, 65, the traveller was passing over the part of the highway out of the travelled path for his own convenience in going to or from a private path to his house. Upon this point we think the Massachusetts cases have gone further than any decisions in this state to exempt towns from liability ; but none of them have gone so far as to hold that if one leaves the travelled path in order to escape injury to his person, that being necessary, he cannot recover of the town for an injury arising from defects in the highway out of the travelled path.

The counsel for the defendant insisted in argument that the court did not submit the question to the jury whether the plaintiff went out of the road from a reasonable sense of danger and in order to secure his personal safety. The exceptions state that the court charged the jury fully in respect to all the features of the case so that no exception was taken except in the particulars specified. The defendant's counsel claim that the refusal to charge as requested in the 6th request was substantially a refusal to submit the above stated question to the jury. That request assumes as law that the traveller who receives an injury when out of the travelled path cannot recover unless he was " forced out of the travelled path by unavoidable accident or circumstances beyond his control." Many cases may be supposed—some have already occurred and are reported—where " unavoidable accident or circumstances beyond the traveller's control " " force him" out of the path. Such is *Cassidy* v. *Stockbridge*, where the horse being frightened swerved the traveller out of the road. Other cases may be supposed where the traveller from necessity voluntarily leaves the travelled road, and yet is not " forced out by unavoidable accident or circumstances beyond his control." The case at bar is precisely one of this kind. The plaintiff left the road voluntarily from a reasonable fear of injury if he remained in it, and this was *necessity* in the eye of the law ; but it cannot be said in any proper or ordinary use of language that he was " forced out by unavoidable accident or circumstances beyond his control." Such language limits the necessity to too strict and narrow limits. Had the court adopted this language, the jury would not have considered the plaintiff justified when he voluntarily went out from a reasonable

fear of danger and a reasonable judgment that his safety required it. The court properly refused the request expressed in such language. But we are not to suppose because they refused a request so worded, that they did not give the jury correct instructions upon the point. On the contrary from the words of the bill as before recited we are not at liberty to doubt but that full and accurate instructions on this point were given.

II.   It is claimed that the court erred in saying that "the plaintiff had a right to presume that the road was reasonably safe in its surface, margin and muniments." This must be considered in connection with the subject upon which the judge was charging the jury, and the rest of what he said on the subject. He was considering the point whether the plaintiff used reasonable care in seeking the margin of the highway. He told them that as the plaintiff was blind and could not see the condition of the road—as he was a stranger and knew nothing of the road, he had a right to presume the road was reasonably safe. In this connection we are to bear in mind, that the plaintiff did not know there was any bank or precipice there, nor knew any thing that would lead him to think there was ; that he supposed that there was a ditch on the side of the road, and was feeling for it with his cane in order to get into it.

Now what ought a prudent traveller to have considered in such circumstances? He had no knowledge or means of knowledge as to the actual condition of the road. He was obliged to rely upon his general knowledge of the usual condition of roads. Roads usually have a ditch on the side into which with due caution the traveller can pass,—they are usually reasonably safe in their margin, surface and muniments. He had no means of knowing, no reason for thinking, that this road at this point was not as reasonably safe as roads usually are. He had a right to presume that this road was, as roads usually are, reasonably safe for a foot traveller to pass into the ditch ; reasonably safe in surface, margin and muniments.

In this language of the court we see nothing calculated to mislead the jury ; but rather it presents, very fairly and justly, the condition of the plaintiff, the circumstances by which he was surrounded and the judgment which he ought to have used, and naturally would have used.

III.   The  court  told  the  jury  that  if  the  plaintiff  by  any  want  of
care  and  prudence  in  the  slightest  degree  contributed  to  the  injury  he
could  not  recover.   The  defendant  claims  the  charge  should  have
gone  further  and  held  that  if  any  want  of  care  and  prudence  on  the
part  of  his  attendants  contributed  to  the  injury  he  could  not  recover.
By  " his  attendants "  we  suppose  Nichols  who  drove  the  team  is
meant.   The  casual  presence  of  the  two  females  in  the  wagon  could
hardly  be  claimed  as  requiring  them  to  exercise  any  care  of  him,  at
least  when  out  of  the  wagon.

If  the  injury  had  happened  to  the  plaintiff  by  any  negligence  of
Nichols  in  driving  the  team  it  might  perhaps  have  barred  the  plain-
tiff  from  a  recovery.   But  that  is  not  the  question  here,  and  we  do
not  consider  it.   The  injury  to  the  plaintiff  had  no  connection  with
the  driving  of  the  wagon.   The  injury  happened  to  the  plaintiff
when  he  had  got  out  of  the  wagon  for  a  proper  reason,  and  was  en-
deavoring  reasonably  to  get  out  of  the  road  to  avoid  danger.   The
wagon  was  not  heard  coming  till  after  he  had  got  out  of  his  wagon.

When  Nichols  heard  the  wagon  coming  he  got  out  and  went  to
see  to  the  plaintiff;   he  groped  around  for  him  without  success
until  the  other  wagon  had  passed,  and  then  heard  a  rustling  off
down  the  bank,  and  got  down  there  and  found  the  plaintiff.   Now  if
there  was  any  want  of  care  by  Nichols  it  must  have  been  after  he
heard  the  wagon  coming.   Before  that  there  was  no  danger  to  be
cared  for.   Upon  this  branch  of  the  case  two  questions  arise.
First,  Was  Nichols  the  servant  of  the  plaintiff  having  the  charge
and  care  of  him  and  bound  to  take  care  of  him,  so  that  his  neglect
in  this  respect  could  be  called  the  negligence  of  the  plaintiff?   or,  had
he  any  such  relation  to  him  as  would  make  his  want  of  care  imput-
able  to  the  plaintiff?

Secondly,   If  he  was  such  servant  or  attendant  was  there  evi-
dence  tending  to  show  any  want  of  care  and  prudence  on  his  part?

As  to  the  first  question.   If  the  plaintiff  was  so  blind  as  to  require
the  care  of  a  servant  when  travelling  on  foot  in  the  highway,  and
had  employed  Nichols  to  take  care  of  him  and  keep  him  safe  from
harm,  and  Nichols  in  the  execution  of  this  duty  had  been  negligent,
and  his  negligence  had  contributed  to  an  injury  to  the  plaintiff,  there
would  be  much  reason  for  saying  that  Nichols'  negligence  should  be

deemed the negligence of the plaintiff. He who by necessity substitutes the care of another for his own, ought, it would seem, to be responsible that the care of the other should be equal to what his own should be if exercised in the same matter ; and so responsible for the negligence of his servant, when such negligence affects the rights of third persons.

The case of *Wright* v. *The Malden and Melrose Railroad Co.* in 4 Allen, 283 stands substantially on this ground. A child of two years of age was allowed by its parents to cross a thickly crowded street in Boston unattended. It was run over and injured. The child could not be said to be wanting in care, for it was not of an age at which it could be expected to exercise prudence. But the negligence of the parents in allowing the child to run in the street unattended was held to bar the administrator of the child from a recovery.

But the neglect of a by-stander to save the child from harm would not have that effect.

The charge of the court as to the care which the plaintiff should have used in leaving the road was very full and satisfactory in all respects as it was not excepted to.

Without however assuming to say what the rule should be in such a case, or what its limitations, it is sufficient to observe that there is nothing in this case to show that Nichols had any relation to the plaintiff which imposed on him any duty whatever of taking care of him or of protecting him from injury. All that appears is that Nichols drove the team and the plaintiff rode with him. It does not appear that the plaintiff owned the team, that Nichols was in his service or employment or owed any duty to, or had any care of, the plaintiff, either permanent or temporary. All that is stated is that the plaintiff rode in the wagon with Nichols.

If the plaintiff then had no legal right to demand the exercise of care and prudence by Nichols to preserve him from harm, the want of such care and prudence in Nichols ought not to be chargeable to the plaintiff or deprive him of his redress against the town for an injury which he had no right to ask Nichols to guard against.

The court therefore did not err in refusing to charge as requested on this point.