## THOMAS C. BAGLEY v. TOWN OF LUDLOW.

### Highways. Towns.

The town and public having for more than forty years treated as a highway a space without the limits of the highway as originally surveyed and laid out, the same as if it had been within such limits, the town is bound to keep the same in repair, and is liable for injuries by reason of its insufficiency, the same as if it was embraced within the original survey.

Where the alleged obstruction lay within and upon that part of the highway, that had been worked, and appropriated to the public use, for travel, the question whether lying thus it rendered the highway insufficient, is one of fact to be determined by the jury under proper instructions by the court. The fact that it lay upon grass ground, wholly or in part, would not change the character of the question.

The plaintiff having received an injury by driving in a dark night upon a log lying in the highway, it was *held* proper for the court to instruct the jury that in considering the question of the sufficiency of the highway, they should do it with reference to the circumstances as developed by the case, such as the darkness, the manner in which the accident occurred, and the accident itself.

CASE, for injury received by reason of alleged insufficiency of a highway. Plea, the general issue. Trial by jury, May term, 1867, Windsor County, BARRETT, J., presiding.

On trial the plaintiff gave evidence tending to prove, that in the evening of November 15th, 1865, he, with two other men, started with a horse and wagon from a point in front of Pettigrew's store in the village of Ludlow to go to the residence of the plaintiff, which was on the road to Proctorsville, easterly from the village of Ludlow; that the team was facing west when he started, and that he turned the horse upon the walk, and when he

had got round straight with the road, as he supposed, to go east, he started the horse upon a trot; that the night was so dark that he could not see his horse; that just after starting into a trot the near wheel of his wagon struck the end of a log which lay upon the north side of the street, about nine rods easterly from Petti-grew's store, with its westerly end projecting into the road more than its width beyond the line of grass, which marked the line of travel upon the road, and was between the traveled road and the sidewalk, and its easterly end lying more than its width upon the grass, and that his wagon was thereby overturned and he received the injury complained of; that on the northerly side of the road, at that point, there was a strip of grass, sloping gradually into a shallow ditch, and then a sidewalk; that the surface of the ground under the grass was nearly upon a level with the traveled road, and that the ditch was so shallow that one wheel of a wagon might have run in it and the other wheel upon the road, or grass, without danger of overturning; and that the road, its mar-gin, and the ditch, and the sidewalk had been, for many years, substantially as they were at the time of the accident.

The defendants gave evidence tending to prove, that, by actual measurement, made early the next morning after the accident, and before the log had been removed, the log was twelve inches wide and eight inches thick at its westerly end, against which the wheel struck, and eight inches wide and six inches thick at its easterly end, and was eight feet and ten inches in length; that it lay as near to the side of the ditch as it could, on the side toward the road; that it lay wholly upon the grass and no part of it upon that part of the road where grass did not grow; that there was a strip of grass twelve inches in width between the southerly side of the log, at the point nearest the traveled road, and the dirt upon the road not covered by grass; that from the south side of the west end of the log to the hitching post on the opposite side (southerly side) of the street was forty feet; that from the edge of the grass against the west end of the log to the said hitching post on the south side of the street was thirty-nine feet; that the average width of the traveled street a few rods further easterly was thirty-three feet; that the width of the street a few rods

westerly of the log and between that and Pettigrew's store was sixty-three feet and four inches, the increased width at that point being occasioned by the gradual divergence toward the north of another street from a point a little westerly of where the log lay; that the log lay wholly without the limits of the highway as originally surveyed and laid out; that further easterly than the log there was, at the time of the accident, a line of hitching posts, standing upon the north line of the highway as originally surveyed and laid out, which line of posts extended westerly on said north line, to within two or three rods of where the log lay, and that the log lay wholly without and northerly of the line of posts, if that line had been protracted to the point where the log lay; that there was a culvert extending diagonally across the street, the southerly end being the most westerly, and some of the defendants' evidence tended to show that the log lay wholly east of and about eighteen inches from the northerly end of that culvert; and that from the southerly side of the west end of the log to the deepest point in the ditch, which was near the north side of the ditch, was four feet and eight inches; that the plank, which covered the culvert, extended to the center of the ditch; that the plank for about three feet at the northerly end were not covered with dirt, and that from that point the earth upon the culvert gradually sloped upward, so that it was five or six inches in depth upon the culvert in the traveled road; that the earth upon each side of the culvert, between the north side of the traveled road and the slope of the ditch, was nearly level with the traveled road; that the north side of the west end of the log was thirty-four inches from the north east corner of the most easterly plank upon the culvert; and that, the morning after the accident, the log lay four feet northerly of the nearest wheel track upon the street, other than that made by the plaintiff's wagon, and ten or twelve feet northerly of the ordinary line of travel with teams upon the street.

The evidence showed that the town and the public had for many years, more than forty, treated as highway all inside of and including the ditches, the same as if it had all been within the original survey and location of the highway.

The defendants insisted and requested the court to charge the jury, that if the log lay wholly upon the grass, and was of the size and in the position which the defendants' testimony tended to prove, it did not constitute, in law, an insufficiency of the highway, for which the defendants are liable ; that if the log lay wholly without the limits of the highway, as originally surveyed and laid out, it did not constitute, in law, an insufficiency of the highway.

The court declined to charge as requested ; but instructed the jury, that inasmuch as the log lay within what the town and the public had treated as the highway, lay between the ditches, and the town had exercised jurisdiction over the whole surface for a long term of time, the liability of the town in reference to the alleged defect would be the same as if it was within the surveyed limits of the road.  To the refusal to charge, and to the charge as given, the defendants excepted.

Upon the question of fact, whether leaving the log, of the size and the position it was, was carelessness on the part of the town, the counsel for the defendants insisted and argued to the jury, that they ought to judge of it as they or any other persons, of common and ordinary prudence and judgment would, if they, or such other persons, had stood at that point on the afternoon previous to the accident and had had their attention directed to the question whether it was or was not careless to permit that log to lie where it did.  The court in the charge instructed the jury that this was not a proper rule or criterion ; that in order to form a proper judgment in that respect the jury should place themselves in contemplation of the place and log, with reference to the circumstances, as developed by this case, such as the darkness, the turning round of the team, the manner in which the accident occurred, and the accident itself.  To this part of the charge the defendants excepted.

The court charged very fully and particularly as to all the aspects of the case presented by the evidence ; as to the duty of the plaintiff to exercise care and prudence ; the duty of the town as to the traveled track, and margins of highways, having reference to the kind and amount of use for the road ; and as to the use of

roads in the night and darkness; to which exception was taken only in the particulars specified. The court particularly explained to the jury what constitutes such a neglect on the part of the town as in contemplation of law would subject towns to liability for injury.

Verdict for the plaintiff. Exceptions by the defendants.

The defendant town petitioned the supreme court, at the January term, 1868, for a new trial, on the ground that the said verdict was against the evidence.

*W. H. Walker* and *Washburn & Marsh*, for the defendants.

The obligation of towns to keep the margins of highways in "reasonably" safe condition imposes upon them no duty, or liability, in respect to any part of the surface of the adjacent land, outside of the legal limits of the highway, and has never been so construed. Their statute duty is to keep the highways "in good and sufficient repair," and their statute liability is for injuries received by means of the "insufficiency, or want of repair," of a highway. And this duty is performed, when, as in the case at bar, the entire surface of the surveyed road is kept entirely smooth and unobstructed.

And the fact, stated in the exceptions, that the town had treated "as highway" all within the ditches, can not extend its liability in this respect.

If it is law in this state, that, however wide the traveled track may be wrought smooth, whether forty feet, or four hundred feet, the town is yet liable even for an accident outside of that width, then towns are, indeed, what in *Prindle* v. *Fletcher*, 39 Vt., 255, it is said they are not, "*insurers against all accidents upon highways.*" The rule has not been carried to this extent in the neighboring states. *Howard* v. *N. Bridgewater*, 16 Pick., 189; *Hixon* v. *Lowell*, 13 Gray, 59; *Smith* v. *Wendell*, 7 Cush., 498; *Keith* v. *Easton*, 2 Allen, 552; *Willey* v. *Portsmouth*, 35 N. H., 313; *Dickey* v. *Maine Telegraph Co.*, 46 Me., 485; 39 Me., 193.

It is not an invariable rule, that the question, whether a highway is insufficient, must necessarily be submitted to the jury, however it may be as to the question whether the person injured was

in the exercise of ordinary care, or whether the injury was occasioned by the insufficiency. The facts may be such as to leave the legal liability a mere question of law, as was held in *Rice* v. *Montpelier*, 19 Vt., 470, and in *Whitney* v. *Essex*, 38 Vt., 270, and in *Prindle* v. *Fletcher*, 39 Vt., 255.

In this case the defendants' testimony tended to show the facts to be as claimed in the request to charge; and the defendants insist that they were entitled to the charge requested.

In determining the question of fact, whether leaving the log, of the size and in the position it was, was carelessness on the part of the town, the jury were allowed to consider elements which could not possibly have aided the town officers in determining the question previous to the time of the accident. Towns are only bound to keep roads in reasonable repair, taking into consideration the character and importance of the roads. Whether a road has been kept in such repair is a question which ought to be capable of being determined, by men of ordinary judgment and prudence, as well before as after the happening of the accident; and it should be determined, in both cases, upon precisely the same state of facts. That an accident has happened has nothing to do with the question. If the road was insufficient, it was as much so before the accident, as afterwards; and if reasonably judicious men can decide, after the accident, that it was insufficient, men of the same character ought to be able to decide so previous to the accident. *Blyth* v. *Birmingham Waterworks Co.*, 36 Eng. L. & Eq., 506; 22 Barbour, 574.

Upon the question, whether the log, of the size and in the position in which it was, was in fact an insufficiency in the highway, the verdict was against the evidence.

*Sewall Fullam* and *Deane & Seaver*, for the plaintiff.

One of the questions decided by the court, to which the defendants excepted, was whether the town was liable for an injury which happened by want of repair or obstructions in the wrought part of the highway out of the limits of the original survey. The request of the defendants on this part of the case was wholly improper and inadmissible; for that excluded all methods of estab-

lishing highways except by the "original survey." This is opposed to the whole current of authorities in this state. *State* v. *Wilkinson*, 2 Vt., 480 ; *Abbott* v. *Mills*, 3 Vt., 521 ; *State* v. *Catlin*, 3 Vt., 530.

The defendants insisted that the court should instruct the jury that if the log lay wholly upon the grass, etc., it did not constitute an insufficiency in law. .

The court had no right to give such a charge. The jury are properly the judges of the sufficiency of the road, and there are so many circumstances to be considered in connection with its sufficiency, such as the place, the amount and kind of travel, etc., that it is utterly impossible for the law to fix any definite or arbitrary rules to govern all cases, and the jury must be left to the exercise of a sound discretion under proper instructions from the court, and they are eminently the proper judges in this respect. *Green* v. *Danby*, 12 Vt., 338; *Kelsey* v. *Glover*, 15 Vt., 708 ; *Willard* v. *Newbury*, 22 Vt., 458 ; *Glidden* v. *Reading*, 38 Vt., 52.

The court was also right in the charge as to the opinion of people of ordinary prudence and judgment. If the road was obstructed or out of repair, that was enough, whatever opinion people might have entertained of it; and certainly so, unless that opinion was formed in view of all the circumstances. *Bardwell et al.* v. *Jamaica*, 15 Vt., 438.

The opinion of the court was delivered by

PIERPOINT, C. J. This is an action brought to recover damages for an injury resulting from an alleged insufficiency of a highway.

The questions presented arise upon the refusal of the court to charge as requested, and the charge as given.

The defendants requested the court to charge the jury, that if the log that the plaintiff's wagon came in contact with, resulting in the injury complained of, lay wholly without the limits of the highway, as originally surveyed and laid out, it did not constitute in law an insufficiency of the highway. The court declined so to charge. The exceptions show that the log did lie wholly without the original surveyed limits of the highway. The case

also shows that the town and the public had for more than forty years treated as highway the place where the log lay, and for some distance beyond and outside of it, the same as if it had all been within the original survey and location of the highway; this being so, the place where the log lay was as much a part of the public highway that the town was bound to keep in sufficient repair for public travel, and for injury upon which by reason of its insufficiency they were equally liable, as if it was embraced within the original survey.

This principle has been so long and by so many decisions recognized and established as law in this state, that neither argument nor authority are now required to support it, and there was no error in refusing this request.

The defendants also requested the court to charge the jury that if the log lay wholly upon the grass, and was of the size and in the position which the defendants' testimony tended to prove, it did not constitute, in law, an insufficiency of the highway for which the defendants are liable. The court did not so charge.

It appears that the log lay within and upon that part of the highway that had been worked, prepared, and appropriated to the public use for travel, and was between the ditches. That at the outer margin of this wrought part of the highway, and close to the ditch, was a strip of land upon which the grass grew. It was a point in controversy at the trial before the jury, whether the log lay wholly upon the grass ground or only partly upon the grass.

It is difficult to see how the question, as to whether the log constituted an insufficiency of the highway, can be determined as a *matter of law*, by the fact that there was grass growing under or around it, or not. The fact that grass grew there was only a circumstance tending to show that there was not as much travel over that precise point as there was nearer the center of the road bed; but whether the log in that position rendered the road insufficient or not, can not be determined as a matter of law by any such circumstance.

The fact that the log lay upon the road bed, or that part of the highway that the town had prepared for public travel, that had

long been in public use, and that the public had the right to travel over, and the right to presume was at all times kept in sufficient repair for that purpose, distinguishes this case from the numerous cases, in this state and the neighboring states, where injuries have resulted from defects or obstructions outside of the road bed, either in the ditches or on the margin of the highway; also from that class of cases, in the other states, where the injury was occasioned by some object in or upon the road bed, with which the person injured did not come in actual contact.

This case presents the simple question, whether this log, lying where it did, rendered the highway insufficient; and that, under the circumstances as developed by the bill of exceptions, is clearly a question of fact, to be determined by the jury under proper instructions by the court.

The only remaining question is, did the court give the jury proper instructions? The counsel for the defendants insisted, and argued to the jury, that they ought to judge of the question as they or any other persons of common and ordinary prudence and judgment would, if they or such other persons had stood at that point on the afternoon previous to the accident, and had had their attention directed to the question whether it was, or was not, careless to permit that log to lie where it did. The court, in the charge, instructed the jury that this was not a proper rule or criterion; "that in order to form a proper judgment in that respect, the jury should place themselves in contemplation of the place and log, with reference to the circumstances as developed by this case, such as the darkness, the turning round of the team, the manner in which the accident occurred, and the accident itself."

The question was not, were the officers of the town careless in permitting the log to remain in the highway, but was the highway insufficient with it there.

The rule, as contended for by the defendants, excluded from the consideration of the jury everything except what could be seen when standing in the highway in view of the log, in broad daylight. This criterion, we think, is altogether too narrow and limited. A man standing there in the daytime might think that the log did not make the road insufficient, because there was an

28

abundance of room to pass elsewhere, and the traveler seeing it could always avoid it; and again he might think the log was not sufficiently large to cause any injury if a traveler should come in contact with it; but the public have the right to travel in the night as well as in the daytime, and are often compelled to, and it is the duty of the towns to keep their roads in a reasonable state of repair for travel both by night and day, and the public have a right to presume they are so. Hence, in judging of this question, darkness is a proper element to be taken into the account. The same man standing in the same place in a dark night, knowing that the log was in the highway, but being unable to determine its precise locality, or the locality of the surrounding objects, might come to a very different conclusion as to the propriety and safety of permitting it to remain there, or the probability of a traveler coming in contact with it, who was ignorant of its being there.

The principal objection that has been urged to the charge of the court as given, is that the jury were permitted to consider the fact that the injury had actually resulted from the plaintiff's wagon coming in contact with the log, in determining the question of the sufficiency of the highway. In settling this question, it is necessary for the jury to decide whether the object complained of is of sufficient magnitude to produce an injury in case the traveler comes in contact with it, and certainly there can be no more satisfactory evidence on this point than the effect produced when a party comes in contact with it. In *Kent* v. *Lincoln*, 32 Vt., 591, evidence of the effect produced upon wagons driven by other persons, that came in contact with the obstruction complained of, was held admissible to show the insufficiency of the highway.

No objection is made to the charge on the ground that it was not sufficiently full and explicit upon the point, but that it submitted certain elements to the jury to be considered by them that ought to have been excluded, and probably only so much of the charge on this point was inserted in the bill of exceptions as was necessary to enable the defendants to raise that question.

We find no error in the trial below. The application for a new trial on the ground that the verdict was against evidence, being virtually abandoned, is dismissed.

The judgment of the county court is affirmed.