## ISAAC K. DREW v. TOWN OF SUTTON.

### Highway.  Evidence.

1. Whether a highway is sufficient or not is a question of fact for the jury; and there was no error in that the court refused to direct a verdict for the defendant, although the plaintiff's evidence showed that the defect was *six inches outside of the highway*, being a steep embankment twenty-two feet high, without railing or muniment ; that the highway was three rods wide, and the wrought or travelled part thirty-eight feet, level up to the brink ; that the injury occurred in the night, and in consequence of the darkness the plaintiff was unable to see the surroundings, and drove off the brink.

2. To render the town liable it is not necessary that the defect be *in* the way, if it is in such close proximity as to render travelling along the way dangerous.

3. A physician was allowed to testify that he called on the plaintiff sometime after the injury, not professionally, but to transact business and that he told him that " he had a great deal of pain in his head, and that his neck was hardly able to support his head, unless he could get where he could rest it upon his hand or some object forward of him." *Held,* that the testimony should be taken as though the witness was not a physician ; but that it was admissible as referring to his then present condition.

ACTION for injury on the highway.  Trial by jury, September Term, 1879.  Orleans County, REDFIELD, J., presiding.  Pleas, general issue and notice.  Verdict for plaintiff.  The exceptions stated :

" The plaintiff's testimony showed that the highway at the place where the injury occurred was fully three rods wide, and that the wrought or travelled part of the same was thirty-eight feet in width ; that at said point the highway was slightly descending, going in a southerly direction, and that on the westerly side there was a steep embankment in the vicinity of twenty-two feet high, and several rods long, and that at the foot of the same there was a mill pond, and that there was no muniment or railing to prevent going off said embankment;

That the brink of said embankment was six inches beyond the westerly limit of said highway as located and established, and defendant's evidence showed it somewhat more, and that the highway was substantially level up to the brink, there being no

ditch ; and that this injury occurred in the night time of the day of . ' A. D. 1877, while driving over said road going south ;

That the highway at and north of the place of accident was not straight, but curved to the east so that a straight line established along the centre of the travelled track at a point about 10 rods north of the place of accident, if - extended in a straight course southerly, would go off the bank above described just southerly of the place of accident ;

That in consequence of the darkness he was unable to see the road and its surroundings, and drove off the brink of the embankment at the point before described. His wagon was overturned, and he was thereby thrown down said bank, and landed at its foot in a sitting posture in the soft earth or mud.

The plaintiff's evidence further tended to show that in consequence of the fall his spine and one of his hips were greatly injured so that he had suffered great pain, and been unable to perform labor to any considerable extent for quite a part of the time since the injury. During said trial the plaintiff introduced Dr. J. F. Skinner, who testified that he was a physician and surgeon of long practice; and that during the winter of the plaintiff's injury he called at the plaintiff's house to transact some business with him, and while there had some talk with him about his condition, and among other things stated as follows (in part) :

Q. Did you learn his case and examine him at all at that time, or interest yourself in it?

A. Not with a view of prescribing, nor with any expectation of giving evidence. . . .

The doctor's testimony was objected to. Judge REDFIELD stated :

" I don't think the mere naked narration, weeks after the accident, to Dr. Skinner is any more admissible than to any other person, unless he took some notice, professionally, of the declaration that he made in connection with certain disabilities that the doctor noticed. The doctor was not there on professional duty, and he made no examination professionally. But if the doctor listened to his narration, and observed something about him as he explained his symptoms, so far I think it is admissible. You may relate, doctor, under their objection, anything you discovered about him and what he said either in answer to your questions, or the explanation he gave to you in connection with the disabilities you observed."

A. " I discovered that he moved with considerable effort in

getting up from the lounge on which he was reclining, I think when I went in, and sitting in the chair. . I noticed that while sitting there was a table forward of him, and he seemed to require for his support something forward of him to enable him to sit in the chair with any degree of ease and comfort, and on my inquiry, as I should of any neighbor as to how he felt, he said he had a great deal of pain in his head, and that his neck was hardly able to support his head, unless he could get where he could rest it upon his hand or some object forward of him."

*Belden & Ide*, for the defendant, cited on the question that Dr. Skinner's testimony was not admissible, *Knox v. Wheelock*, 54 Vt. 150; *Bacon v. Charleston*, 7 Cush. 585; 1 Phil. Ev. marg. p. 183; on the question that the court erred in not directing a verdict for the defendant, as the plaintiff's own evidence showed that the defect was outside of the limits of the highway. G. S. c. 25, ss. 1, 41; *Brown v. Fairhaven*, 47 Vt. 390; *Page v. Weathersfield*, 13 Vt. 424; *Morse v. Richmond*, 41 Vt. 435; *Sparhawk v. Salem*, 1 Allen, 30; *Sykes v. Pawlet*, 43 Vt. 449; *Whitney v. Essex*, 38 Vt. 270; *Abbott v. Wolcott*, 38 Vt. 666; *Johnson v. Irasburg*, 47 Vt. 28; *Hutchinson v. Concord*, 41 Vt. 271; *Rice v. Montpelier*, 19 Vt. 470; 131 Mass. 452; *Ozier v. Hinesburgh*, 44 Vt. 221; Angell Highways, 291; *Kelley v. Fond du Lac*, 31 Wis. 186; *Cobb v. Standish*, 14 Me. 198; *Willey v. Ellsworth*, 64 Me. 57; 66 Me. 348; 68 Me. 365; *Tisdale v. Norton*, 8 Met. 388; 105 Mass. 600; 100 Mass. 256.

*William W. Grout* and *L. H. Thompson*, for the plaintiff, cited on the question that Dr. Skinner's testimony was admissible, 6 East. 38, 187; 32 Vt. 404; ib. 591; 45 Vt. 275; 11 Allen, 322; 7 Cush. 381; 1 Greenl. Ev. s. 102; 48 Vt. 335; 54 Vt. 150; on the question that the highway was insufficient, *Leicester v. Pittsford*, 6 Vt. 245; *Green v. Danby*, 12 Vt. 338; *Cassedy v. Stockbridge*, 21 Vt. 391; *Willard v. Newbury*, 22 Vt. 458; *Sessions v. Newport*, 23 Vt. 9; *Hill, Adm. v. New Haven*, 37 Vt. 501; Sher. & Redf. Negl. s. 390; *Kelsey v. Glover*, 15 Vt. 708; 43 Vt. 192; 45 Vt. 72; 1 Allen, 30; *Alger v. Lowell*, 3 Allen, 402; *Stevens v. Boxford*, 10 Allen, 25; *Adams v. Natick*, 13

Allen, 429 ; 105 Mass. 470; *Marshall* v. *Ipswich*, 110 Mass. 526 ; *Warner* v. *Holyoke*, 112 Mass. 367 ; *Willey* v. *Portsmouth*, 35 N. H. 303 ; *Hill* v. *Davis*, 41 N. H. 333 ; 59 Ga. 544 ; 44 Barb. 386, 395 ; *Hey* v. *Philadelphia*, 81 Pa. St. 45 ; 71 Pa. St. 276 ; Wood Nuisances, s. 378.

The opinion of the court was delivered by

ROWELL, J.   The testimony of the witness Skinner must be taken the same as though he was not a physician, as he was not in professional attendance upon the plaintiff.   But we think that what the plaintiff told him about having pain in his head and his neck not being able to support his head, had reference to his then present condition, and so admissible under our decisions.

Nor do we think there was error in refusing to direct a verdict for the defendant, as requested.   We think it was a question of fact for the jury to find, under all the circumstances, whether the road was sufficient or not.   It is conceded that this is the general rule when the defect complained of is *within* the limits of the way, but contended that when no such defect exists, towns are not legally bound to guard the traveller from receiving injury *beyond* the limits by reason of steep banks, precipices, and the like, although in dangerous proximity to the way.   Many things may constitute insufficiencies in highways ; and the lack of railings or other muniments, when necessary to the safety of the travel, is a very frequent defect.   It was the duty of towns to keep their roads in a reasonable state of repair, not only in their " surface and margins," but in their " muniments " as well.   *Glidden* v. *Reading*, 38 Vt. 52.   Besides, they were bound to construct and maintain their roads reasonably sufficient with reference to such accidents as might be expected occasionally to occur upon them. *Lindsey* v. *Danville*, 45 Vt. 72.   It was further their duty to keep their roads reasonably safe for travel by night as well as by day ; and the public had a right to presume that they were so. PIERPOINT, C. J., in *Bagley* v. *Ludlow*, 41 Vt. 434.   If a railing is lacking where one is necessary to the safety of travellers, the travelled way itself is thereby rendered unsafe and out of repair. And it makes no difference whether this necessity for a railing is

created by the condition of things *within* the limits of the way or *without* the limits, but in dangerous proximity to the way. In either case the question is, Does the safety of the traveller require a raiilng? Is the road reasonably safe and sufficient without one? In this case the insufficiency complained of is the lack of a railing or other muniment to guard against the steep bank that came within about six inches of the westerly limit of the highway, the surface of the ground at this point being smooth and level to the very brink, not affording even the obstruction of a ditch or a rough margin to warn the traveller that he is out of the road.

This is in no just sense a case of voluntary departure nor of straying from the way, like many of the cases relied upon by the defendant, and the law of those cases is not applicable. It cannot be said, as argued, that the plaintiff "intended the act he did, though he did not intend the consequences." He intended neither. The case affords no warrant for saying that he did. By reason of the darkness he could not see where he was going, and *accidentally* drove off the bank. That is the case. Now suppose we adopt the defendant's contention, that the defect must exist *in* the way, not beyond its limits, in order to render the town liable. That, again, is this case; for the lack of a railing, which the jury has said was necessary, was a defect *in the way itself*. *Hayden* v. *Attleboro*, 7 Gray, 338. In that case the injury arose from being precipitated into a cellar that was either within the limits of the way or in such close proximity thereto as to render travelling along the way dangerous. The defect complained of was the want of a railing. The court said that the want of a railing necessary to the safety of travellers was a defect *in the way itself*, for which the town was liable. In *Coggswell* v. *Lexington*, 4 Cush. 307, the injury was occasioned by a post outside the way as located. The court, not deciding whether the town had the right as against the owner of the land on which the post stood to enter and remove it, said "it clearly had the right, and it was its duty, if it could not lawfully remove the post, to place such a fence or other barrier between it and the road as would have rendered the road safe." The law of Massachusetts on this subject is tersely stated by GRAY, C. J., in the recent

case of *Puffer* v. *Orange*, 122 Mass. 389. " A town is bound to erect barriers or railings, where a dangerous place is in such close proximity to the highway as to make travelling on the highway unsafe. But it is not bound to do so, to prevent travellers from straying from the highway, although there is a dangerous place at some distance from the highway which they may reach by so straying." In *Warner* v. *Holyoke*, 112 Mass. 362, the court says : " The law has nowhere undertaken to define at what distance in feet and inches a dangerous place must be from the highway in order to cease to be in close proximity to it. It must necessarily be a practicable question, to be decided by the good sense and experience of the jury." It seems to us that this is the only practical rule that can be adopted ; and that, as a general rule, it is for the jury to say, in the concrete case, whether the place is sufficiently near the highway to render travelling upon it unsafe unless guarded against, and that, as said in *Adams* v. *Natick*, 13 Allen, 432, this " must be determined by the character of the place or object between which and the traveled road it is claimed that the barrier should be interposed." As said by HOAR, J., in *Alger* v. *Lowell*, 3 Allen, 405: " The true test is, not whether the dangerous place is outside of the way, or whether some small strip of ground not included in the way must be traversed in reaching the danger, but whether there is such a risk of a traveller, using ordinary care in passing along the street, being thrown or falling into the dangerous place that a railing is requisite to make the way itself safe and convenient."

Nor do we think the Massachusetts doctrine is based on any peculiar wording of their statute, which provides that " highways . . . shall be kept in repair, . . . so that the same may be reasonably safe and convenient for travellers." Pub. Sts. c. 52, s. 1. Our statute provides that highways shall " be kept in good and sufficient repair," so that, as this court has always in effect said, " the same may be reasonably safe and convenient for travellers."

The Maine cases relied upon by the defendant are not opposed to the Massachusetts cases. In *Willey* v. *Ellsworth*, 64 Me. 57, it is said in the head-note, that " when a railing is necessary for

the safety of travellers, the want of such a railing is a defect in the way for which the town is responsible"; and *Hayden* v. *Attleboro* and *Coggswell* v. *Lexington* are cited and commented upon approvingly by the court.   But the real question in that case was one of variance.   The defect complained of was a snow-drift *in* the highway, as alleged in the declaration ; but the plaintiff was allowed to prove the existence of a snow-drift *without* the located limits of the highway, and to recover damage resulting therefrom.   The court said that proof of a snow-drift without the highway in no way proved or tended to prove the allegations in the declaration ; that the verdict was obviously for a defect not mentioned in the declaration, for that alleged a drift *in* the highway ; that the only possible defect in the highway was that there was no barrier to prevent travellers from going out of the road, but that no such defect was alleged.   An examination of *Doyle* v. *Vinalhaven*, 66 Me. 348, *Blake* v. *Newfield*, 68 Me. 365, and other Maine cases, will show, we think, that the Massachusetts doctrine on this subject is adopted there.   It is also adopted in New Hampshire.   *Willey* v. *Portsmouth*, 35 N. H. 303.

But we do not mean to be understood as sanctioning the doctrine that towns were bound to erect railings merely to keep travellers from *straying* out of the highway, where there was no unsafe place in dangerous proximity thereto.   On the contrary we would require the party to show that the defect that caused the injury existed either in the highway or so contiguous thereto, as to make it dangerous to travel on the highway itself.   Nor does this doctrine run counter to any case in this State.   It was in nowise involved in *Page* v. *Weathersfield*, 13 Vt. 424.   The only question decided there was, that "no action can be maintained against a town for an injury happening on a road or way opened by private individuals on their own land for their private use, although it has been travelled for a great number of years, if no act of the owners and the selectmen of the town has ever been done, recognizing it as a public road." *Sykes* v. *Pawlet*, 43 Vt. 446, is not analogous.   It was a case of voluntary departure from the highway for the purpose of driving under a private shed beyond its limits, in getting out of which, plaintiff

backed his team over an unguarded bank. In *Brown* v. *Fairhaven* and *Westhaven*, 47 Vt. 386, the defective way was not *in* the defendant towns, but in the State of New York, and therefore it was held that the statute was not broad enough to charge them with liability.

Judgment affirmed.

Dissenting opinion by

Ross, J. . I find myself unable to concur in the judgment rendered in this case by the majority of the court. On the facts stated in the exceptions, it seems to me that the judgment is a practical unsettling of the law of the liability of towns for the condition of their highways as heretofore determined and announced by this court, and greatly enlarges that liability as it existed under the statute as it stood at the time of the injury. Since then the statute has been so far modified, that at present they are liable to travellers for injuries sustained through insufficiencies only in the culverts and bridges of their highways. The question involved in the decision of this case is still one of considerable practical importance. The exceptions state : " The plaintiff's testimony showed that the highway at the place where the injury occurred was fully three rods wide, and that the wrought or travelled part of the same was thirty-eight feet in width ; that at said point the highway was slightly descending, going in a southerly direction, and that on the westerly side there was a steep embankment in the vicinity of twenty-two feet high and several rods long, and that at the foot of the same there was a mill pond, and that there was no muniment or railing to prevent going off said embankment ; that the brink of said embankment was six inches beyond the westerly limit of said highway as located and established, and defendant's evidence showed it somewhat more ; and that the highway was substantially level to the brink, there being no ditch ; and that this injury occurred in the night time of the day of A. D. 1877, while driving over said road going south ; that said highway at and north of the place of accident was not straight, but curved to the east so that a straight line established along the centre of the travelled track at a point

about ten rods north of the place of accident if extended in a
straight course southerly would go off the bank described just
southerly of the place of accident ; that in consequence of the
darkness he was unable to see the road and its surroundings, and
drove off the brink of said embankment at the point before de-
scribed." Upon these facts appearing from the plaintiff's own
showing, the defendant requested the court to direct a verdict in
its favor. The court refused this request. I think the request
should have been granted. Observe that the place of danger was
wholly without the limits of the highway, that the only defect
complained of was the absence of a railing or muniment to guard
against going over the embankment, and that " in consequence of
the darkness the plaintiff was unable to see the road and its sur-
roundings, and drove off the brink of said embankment." It is
to be noticed that the cause for the plaintiff's departure from the
wrought and travelled portion of the highway and for driving
over the embankment located outside of the limits of the highway,
was his inability to see the travelled track and its surroundings,—
or the darkness. Hence it follows if this decision is to obtain and
become the established law of the State, whenever the traveller
on account of the darkness departs from a travelled track of suf-
ficient width and smoothness to accommodate and safely carry the
prudent traveller in the daylight, and runs against a hitching-post,
lamp-post, shade-tree, stump, rock, bank, or into a ditch or other
place likely to overturn his carriage, located on the margins of
the highway or in the immediate proximity to such margins, and
receives an injury to himself or team, the town is liable. When
the facts are not in dispute the liability of the town thereon is a
question of law to be determined by the court, and not of fact for
the consideration of the jury. It was so held in *Abbott* v. *Wolcott*,
38 Vt. 666. In *Swift* v. *Newbury*, 36 Vt. 355, it is said : " We
do not controvert the proposition that, under certain circumstan-
ces where there is no dispute or controversy about the facts the
want of proper care in the traveller may be inferred as a conclu-
sion of law." Cases are cited sustaining the proposition. In
*Barber* v. *Essex*, 27 Vt. 62, the late Chief Justice REDFIELD says :
" Questions of negligence where the law has settled no rule of

diligence can never be determined as a matter of law, except where the testimony is all one way. If there is no testimony tending to show negligence, then it may be determined by the court there was no negligence. . . Or if the testimony is un-contradicted and makes a clear case of negligence, it becomes matter of law only." The defendant's request was based on the facts as shown by the plaintiff in regard to which there was no controversy. On these authorities, as well as upon general principle, if the facts were such as called for it, it was the duty of the court to have complied with the request. Do the facts shown by the plaintiff's testimony show a liability on the part of the town for the injury sustained by the plaintiff? I think not. It is to be observed that the wrought portion of the highway was smooth and without imperfection, thirty-eight feet wide—wide enough for four single teams to drive abreast. In other words, as the statute was at the time of this accident, towns to escape liability must either suf-ficiently light their highways to enable the traveller to see and follow the travelled track, or must enclose such track so that when used in the night the traveller cannot pass therefrom upon objects of danger on the margins of the highway, or in the immediate proximity thereto. If it renders passable the whole width of the highway it must then securely fence it so that the traveller may not wander from it when the darkness is too great to enable him to follow it. There is not, probably within the State, a half mile of continuous highway that is not insufficient and out of repair under this decision. Every place of danger on the margins of the highway or in the immediate proximity thereto, unguarded by a railing or muniment becomes an insufficiency whenever the dark-ness is so great that the traveller is unable to see the road and its surroundings, though they may not be such in the daytime. I do not think it would be claimed that this highway was insufficient as regards this plaintiff if he had driven or gone over the embank-ment under like circumstances in the day time. If the exceptions had read: "That in consequence of the daylight he was able to see the road and its surroundings, and drove off the brink of said embankment at the point before described," I do not think, any one would claim it would not have been the duty of the court to

have ordered a verdict for the town. I do not think the darkness operated to change the sufficiency of the highway or the liability of the town. I am aware that my associates who concur in the judgment, deny that it has any such scope. But no analysis which I can give to the facts brings its scope within narrower limits. No necessity for the plaintiff's departure from the wrought portion of the highway, or the highway limits, except the darkness, is disclosed. There was no giving away of a nut or bolt of the carriage, or breaking of the harness, no fright or shying of the horse, no meeting or passing of another team ; in short, there was nothing that compelled, or in the least influenced, the plaintiff's departure from the smooth travelled track except the darkness. Hence, granting that the highway was insufficient by reason of the lack of a railing or muniment, as against a traveller who should be found out of the road and off the embankment by an accident or some necessity, the plaintiff's going off there was not from any such cause, unless darkness be such cause. From that cause and that alone in the language of the exceptions, " he was unable to see the road and its surroundings, and *drove* off the brink of said embankment." No decision in this State, heretofore, has gone so far as to hold that a party, who departed from the travelled track of the highway solely by reason of darkness, or his inability from that cause to see and follow the travelled track, and sustained an injury upon a dangerous object located on the margin of the highway or in the field or lot immediately contiguous thereto, could recover. In *Hunt & Wife* v. *Pownal*, 9 Vt. 411, it was held that where the plaintiff was forced out of an insufficiently guarded travelled track over an embankment by the breaking of a nut or bolt, and received injuries, the town was liable. The doctrine of that case and all subsequent cases which have adopted it, is, that an injury sustained from the combined result of an insufficiency of a highway, and an accident which could not have been foreseen and provided against by the exercise of common prudence, the town must compensate. But it has never before been held in this State, or elsewhere, so far as I am aware, that darkness was such an accident. It would seem that the traveller could better provide against the darkness than the town. He knows when the

darkness so overshadows him that he cannot see the road and its surroundings, and can reasonably provide against it. The town never can know when such darkness will be present, or when the traveller will have occasion to use the road surrounded by such darkness ; nor can it secure him against it without great and unreasonable expense. 1 do not think, the statute was ever intended to impose any such burden or liability upon towns. It has been usually, and I might say universally, held, that while the statute imposes the duty upon towns to make and maintain their highways so that they should be reasonably safe for the safe passage of the prudent traveller thereon, including such accidents as might reasonably be expected to befall him, such as the breaking of his carriage or harness, or the shying or fright of his horse, when these had been selected and used with prudence, or being forced from the travelled track by meeting or passing another team either under control or at large, it was equally the duty of the traveller to find and keep within the travelled and wrought portion of the highway, and to use the same prudently and not to depart therefrom except from actual necessity. In *Rice* v. *Montpelier*, 19 Vt. 470, a hole had been dug in the margin of the highway and near the travelled track, of which the town had notice, and the plaintiff ran into it upon a dark night, whereby his horse and sleigh were injured. The travelled track was twenty to thirty feet wide and level for travel. " The defendant requested the court to charge the jury, as matter of law, that if the plaintiff in a dark night went out of the travelled path of the road for the purpose of getting upon snow " . . or " for his own comfort and convenience, and run into the hole, and the injury happened, he could not recover." The court refused so to charge, and left the whole question to the jury to find whether the road was reasonably safe, and whether the plaintiff was wanting in common care and prudence in the use of it. This plaintiff had a verdict. This court reversed the judgment, and held, in summing up, this language : " We think the jury should have been instructed that if they found that the plaintiff diverged from the travelled road without necessity, but merely for the purpose of having the benefit of the snow, or if the horse took the same direction from natural instinct or from

inability to see the road on account of the darkness, the town should not be held responsible for the consequences which ensued." The doctrine thus announced has until the rendition of this judgment been considered the law of the State.

It has been recognized as such in *Cassidy* v. *Stockbridge*, 21 Vt. 391 ; *Morse et ux.* v. *Richmond*, 41 Vt. 435, and *Glidden* v. *Reading*, 38 Vt. 52. In the last case it is held that it is not necessary that the traveller should be *forced* from the travelled track, but that he may voluntarily leave it from *necessity*. In that case the necessity was,—he being blind,—the avoidance of a team which he heard coming in the darkness towards him. But this falls exactly within the doctrine announced in *Rice* v. *Montpelier, supra*, in which it is held that the traveller could not recover for an injury sustained upon the margin of the highway, if he diverged from the travelled road *without necessity*, and " inability to see the road on account of the darkness " is held not to be a necessity for such divergence. My associates have passed over this feature of the case, with the single remark : " This is in no just sense a case of voluntary departure, nor straying from the way, like many of the cases relied upon by the defendant, and the law of those cases is not applicable. It cannot be said, as argued, that the plaintiff ' intended the act he did though he did not intend the consequences.' He intended neither. The case affords no warrant for saying he did. By reason of the darkness he could not see where he was going, and *accidentally* drove off the bank. That is the case." I quite agree, " that is the case ; but am unable to see—perhaps because darkness has fallen upon me—why the doctrine of *Rice* v. *Montpelier* is not applicable, when it is there said in substance, if the plaintiff's departure from the road was occasioned by an " inability to see the road on account of the darkness " he could not recover. It is asserted that the plaintiff '" accidentally drove off the bank " because by reason of the darkness he could not see where he was going." Webster defines " accident " as " an event that takes place without one's foresight or expectation." It may well be said that his going over the embankment was without the foresight or expectation of the plaintiff, and so accidental. But it cannot well be said

that the darkness came upon the plaintiff " without foresight or expectation." That was no accident to him. There was not, therefore, in any just sense, an accident concurring with an insufficiency of the highway, which compelled or influenced the plaintiff's departure from the travelled track to his injury, as in *Hunt* v. *Pownal, supra.* In *Morse and wife* v. *Richmond,* in which the court had under consideration the duty of towns in regard to the margin of their highways, the court plainly indicates that towns are, or as the statute then stood, were, not under a duty to travellers to keep the margins of their highways entirely free from places of danger, and, substantially, because it is the duty of the traveller to keep in the wrought portion or travelled track of the highway. In a country like ours, of hillsides and valleys, filled with rocks and stumps, where ditches and banks are an absolute necessity, it would be almost an impossibility to construct and maintain highways, so that their margins, or places in " dangerous proximity " thereto, would be entirely free from objects endangering travel if encountered by it. In a note to that case by the learned late Chief Justice REDFIELD, he says : " All (statutes) substantially agree in requiring the municipality to provide and maintain a safe and convenient passage for travellers. This, unquestionably, primarily applies to the travelled portion of the highway. So that one who for mere convenience, and without actual necessity, departs from the travelled portion of the highway cannot recover for any injury he may sustain thereby in consequence of obstructions to passage." I have never understood that a railing or muniment was required to protect the traveller from a dangerous place or object on the margin of the highway unless his departure from the travelled track was from necessity. In *Bagley* v. *Ludlow,* 41 Vt. 425 ; *Swift* v. *Newbury, supra ; Barber* v. *Essex,* 27 Vt. 62 ; *Glidden* v. *Reading,* 38 Vt. 52, and *Cassidy* v. *Stockbridge,* 21 Vt. 391, the element of darkness is found, but in none of them is it given the force of a necessity compelling or warranting the departure of the traveller from the wrought portion of the highway ; but there was in each in which there was such departure another cause which compelled or rendered a departure therefrom a necessity. This element is given

effect only upon the question of whether the plaintiff was at the time in the exercise of common care and prudence. It is plainly intimated that darkness increases the care and prudence to be exercised by the traveller ; and in *Barber* v. *Essex, supra,* it is intimated that the darkness might be so great as to render it imprudent for the traveller to proceed without a light. On the other question, largely discussed in the opinion of the court and at the bar, whether a town is bound to protect the traveller against an object of danger in the immediate proximity to but not within the limits of the highway, when *necessarily* brought in contact with it, I express no decided opinion. The cases from Massachusetts show the difficulty of determining upon any safe rule as to what places of that character shall be adjudged to be within "dangerous proximity" of the highway. While good reasons can be given for holding towns liable for injuries received at such places when brought in contact with them from actual necessity, there is very considerable difficulty in drawing any safe line marking the limit of the liability of towns except at the limits of the highway. On the other point I cannot but think that my associates have made a new and unwarranted departure in the law of the liabilities of towns for the condition of their highways, and of the rights of travellers in using them ; and am compelled to dissent from the affirmance of the judgment rendered by the County Court. I should reverse that judgment.