SAMUEL MORSE AND WIFE v. TOWN OF RICHMOND.

*Highways. Towns.*

Towns owe a statutory duty to travelers, for the breach of which the party injured may maintain an action, to remove from the margins of their highways objects unlawfully deposited there, which, by their frightful appearance, make it unsafe to travel the road with ordinary horses.

The duty of the town to remove the obstruction from the highway does not attach until they know of it, or ought to know of it, nor while it is upon the highway a reasonable time for the purposes of transportation over it.

Though a town is not bound to work the whole width of the road where the travel does not require it, yet they have a right to control the whole width and have a corresponding duty. If they suffer objects to remain deposited on the margin which, by their frightful appearance, make the whole road unsafe, they will be liable for such accidents by fright as are the natural result of their neglect.

Towns are held to a higher responsibility with reference to removing deposits of private property which are placed on the road without right and obstruct public travel by their frightful appearance, than with reference to removing equally dangerous objects which either are incident to the nature of the soil and country or are thrown upon the margin in process of constructing the road.

The defendants excepted to the ruling of the court that if the bales of hay deposited without right by a railway company upon the margin of the defendants' highway presented such an appearance that they might reasonably be expected to and naturally would frighten ordinary horses, and the plaintiff's injury occurred by such fright, the defendant town would be liable, the plaintiff's case in all other respects being first made out, although the surface and width of the traveled path were faultless. *Held*, that there was no error.

Distinction between highway laws of Vermont and Massachusetts.

TRESPASS on the case for injuries alleged to have been sustained by the plaintiff's wife, by reason of defects and insufficiencies in a certain highway in said town of Richmond, which the defendants were bound to repair. Plea, the general issue. Trial by jury, in Chittenden county, PIERPOINT, C. J., presiding.

On trial the plaintiff proved that on June 15, 1864, a freight train, about 7 or 8 o'clock in the morning, came up on the Vermont Central railroad, and one of the cars loaded with bales of

hay was on fire ; that to extinguish said fire the railroad employees unloaded said hay on the depot grounds, and scattered some bales over the depot grounds, and some of said bales, partially charred, were, for the purpose of preventing their consumption and further spread of said fire, thrown into the lines of the highway where the injury happened, and close to the principal traveled track, *and were by the defendants suffered so to remain within* the lines of the said highway, and close to the said traveled track, and for several hours after one of the selectmen of said town had notice thereof, and until after the injury took place.

Evidence was introduced to prove that where said bales of hay lay, the road was a good, perfect, smooth, and level road, fit and safe for travel in all its parts, more than fifty feet in width, from the place where any of said bales of hay lay, to some buildings on the opposite side of said road, and that teams in passing this place were not confined to any particular path, but traveled at the pleasure of the driver over a space of forty feet in width or more in said road, although the greater part of the travel at that point generally passed near to where said bales of hay were lying at the time of the accident.

The defendants requested the court to charge the jury that although some of said bales of hay might have been within the lines of the highway, and might by their so being there have frightened the horse, and thereby have caused the injury, yet if they further found that, at the place where said bales of hay lay, and at the time when said injury happened, the road was in all other respects made of sufficient width, smooth and level for the safety of travelers and their teams in passing, and was not in any respect insufficient or out of repair at the place aforesaid, otherwise than that, by said bales of hay lying within the lines of said highway, as aforesaid, horses might take fright, then the plaintiffs are not entitled to recover.

But the court refused so to charge, and thereupon the defendants excepted not only to the refusal, but also to the charge given, which is sufficiently recited in the opinion.

Section 41 of chapter 25 of the General Statutes provides that " If any special damage shall happen to any person, his team, car-

riage, or other property, by means of the *insufficiency or want of repairs* of any highway," the person sustaining such damage shall have a right to recover the same in an action on the case, etc.

*Jeremiah French* and *E. R. Hard,* for the plaintiff, cited *Kelsey v. Glover,* 15 Vt., 708; 18 Maine, 286; *Cassedy* v. *Stockbridge,* 21 Vt., 391; *Willard* v. *Newbury,* 22 Vt., 458; *Batty* v. *Duxbury,* 24 Vt., 155; *Barton and Wife* v. *Montpelier,* 30 Vt., 650; Angell on Highways, § 259, § 261, § 262; *Winship* v. *Enfield,* 42 N. H., 197; *Chamberlain* v. *Enfield,* 43 N. H., 356; *Littleton* v. *Richardson,* 32 N. H., 59; *Dimock* v. *Suffield,* 30 Conn., 129; *Keith* v. *Easton,* 2 Allen, 552; *Kidder* v. *Dunstable,* 7 Gray, 104; *Vinal* v. *Dorchester,* 7 Gray, 421; *Howard* v. *N. Bridgewater,* 16 Pick., 189.

*Jacob Maeck* and *S. H. Davis,* for the defendants, cited *Hixon v. Lowell,* 13 Gray, 59; *Smith* v. *Wendell,* 7 Cush., 498; *Vinal* v. *Dorchester,* 7 Gray, 421; *Shepardson* v. *Colerain,* 13 Met., 55; *Howard* v. *N. Bridgewater,* 16 Pick., 189; *Kellogg* v. *Northampton,* 4 Gray, 65; *Davis* v. *Dudley,* 4 Allen, 557; *Marble* v. *Worcester,* 4 Gray, 395; *Dickey* v. *M. Tel. Co.,* 46 Maine, 483; *Farnum* v. *Concord,* 2 N. H., 393; *Holley* v. *W. T. P. Co.,* 1 Aik., 74; *Glidden* v. *Reading,* 38 Vt., 52; *Cassedy* v. *Stockbridge,* 21 Vt., 391; *Kelsey* v. *Glover,* 15 Vt., 708; *Sessions* v. *Newport,* 23 Vt., 9; *Kingsbury* v. *Dedham,* 13 Allen, 186; *Felch* v. *Gilman,* 22 Vt., 38; *People* v. *Utica Ins. Co.,* 15 Johns., 358; *Griswold* v. *Nat. Ins. Co.,* 3 Cowen, 96.

The opinion of the court was delivered by

STEELE, J. This cause has been three times argued. We understand from the case, as well as from the statement of the defendants' counsel at the first argument, that so far as the liability of the town might depend on the length of time that the bales of hay had been suffered to lie upon the highway, or upon proper notice to the town officers that they were there, the rulings of the county court were such that the defendants took no exception. The case, therefore, stands in this court on precisely the

same ground that it would if it were conceded that the hay, which had been unlawfully deposited by the railway company upon the margin of the public highway, had been suffered to remain there an unreasonable time with the full knowledge of the officers of the town. No question arises in this court upon the plaintiffs' prudence. The only exception reserved is made to the *pro forma* ruling of the county court, that even though the surface and width of the traveled track were faultless, and the bales of hay were outside that track upon the highway margin, still the town would—" the case in all other respects being made out"—be liable if the bales of hay *" presented such an appearance that they might reasonably be expected to, and naturally would, frighten ordinary horses,"* and the injury happened by reason of the plaintiffs' horse taking fright at them. The points relied on by the defence are, first, that the bales of hay were upon the *margin* of the road ; and, secondly, that the accident was occasioned by fright at them and not by collision with them. The case fairly presents the mere question, whether towns owe a statutory duty to travelers, for the breach of which the party suffering special damage may maintain an action, to remove from the margins of their highways objects unlawfully deposited there, which, by their frightful appearance, make it unsafe to travel the road with ordinary horses ?

I. Does the fact that the hay lay upon the margin instead of the path of the highway alter the rule of liability ?

If a town may be liable for a failure to remove an object unlawfully deposited upon the traveled track, *for the reason* that it obstructs travel by its frightful appearance, and thus renders the road unsafe, they must be equally liable when the object lies upon the margin, and naturally produces—as the jury under the charge have found it did in this case—precisely the same result. The result produced is, that the wrought path cannot be safely used by travelers. The cause which produces the result is an unlawful deposit of private property within the lines of the highway under the control of the town. If towns are bound to regulate their conduct with any reference to security from fright, less cannot be required of them than the removal of such obstructions as were complained of in this case, from any part of the highway, when

their effect is to make the whole of it unsafe. This, of course, is said with the qualification that the duty does not attach until the town know of the obstruction, or ought to know of it. Nor would it attach while the property is lying upon the highway a reasonable time in loading or unloading, or for the ordinary purposes of transportation. It is true that towns are not bound, where it is unnecessary, to work the whole width of the highway, and if a traveler voluntarily leaves the path to travel upon the margin, he does so at his own risk : *Rice* v. *Montpelier*, 19 Vt., 470. But towns have a right to control the whole width of the road, and they have a corresponding duty. It is not necessarily a good defense to a claim for damages that they were incurred by reason of an obstruction upon the margin. On the contrary, it is well settled that it is the duty of towns to forbid and prevent the use of their highway margins as places of deposit for private property, whether it be lumber, shingles, logs, or other matter that may interfere with travel ; and if they do negligently suffer the margins of their roads to become and remain unsafe by being thus encumbered, the party who, without fault on his part, meets with an accident by driving against them, may recover of the town. Among the numerous cases recognizing this doctrine are *Cassedy* v. *Stockbridge*, 21 Vt., 391 ; *Snow* v. *Adams*, 1 Cush., 443.

Nor does it alter the case that the party injured may sustain an action against the person who placed the nuisance upon the highway. It is the right of the party to proceed against the town if they are in fault, and the town may, if held to damages, look to the individual who obstructed the highway. See *Newbury* v. *Pass. R. R. Co.*, 25 Vt., 377, and *Willard* v. *Newbury*, 22., Vt., 458. Assuming, then, that towns by such a neglect may become, as has always been held, liable to travelers who from some unforeseen cause, not their own fault, diverge from the traveled track and meet with damage by collision with the obstruction, it follows that towns would still more clearly be liable when such objects occasion damage to the traveler who does not diverge from the accustomed path, but uses the road in the ordinary manner, *provided* towns may be liable at all for an injury occasioned by fright. When the margin of the highway is encumbered by

an obstruction, and the obstruction is frightful in its appearance, only the exceptional individual who leaves the path incurs the danger of accident by collision, while everybody who travels any part of the road confronts the danger of accident by fright. It is very manifest that the error of the county court, if any, does not lie in the fact that the hay was upon the margin instead of the traveled path. The question must simplify itself to an inquiry whether a town may be liable for such accidents by fright as are the natural consequence of the obstruction they suffer to remain on the road.

II. In examining this second question—whether towns are bound to remove obstructions deposited upon their roads when their natural operation is to occasion accidents by fright in using ordinary horses—we must, as in all questions upon a statutory liability, have recourse to the statute and gather its meaning, as we can, from its language, its reason, and purpose; from the light shed upon it by the other statutory provisions relating to the same general subject, and by the judicial interpretation it has received. The statute in terms requires towns to *keep* their highways in "good and sufficient repair," and makes them liable for special damages sustained by reason of their "insufficiency or want of repair." This language is quite broad enough to cover a case where a road cannot safely be travelled with ordinary horses. A statute, however, should not always be interpreted literally. It is often and properly said that this statute is not intended to impose an absolute liability upon towns for every insufficiency. They are only required to do what is practicable to be done to provide and preserve a condition of reasonable safety in their roads with reference to the amount and kind of travel they accommodate: *Prindle* v. *Fletcher*, 39 Vt., 255. But, it can hardly be said that a road in which obstructions are suffered to be placed and remain, which by their appearance are calculated to frighten ordinary horses, is in a condition of reasonable safety for travel of any ordinary kind or amount. Nor is it impracticable to prevent the continuance of such an obstruction. It is well understood that the duty of the town is not limited to the furnishing of a proper width and smoothness of path. The cases are numerous

where towns have been held liable for not erecting proper muni-
ments or barriers to protect travelers from accidentally going out
of the road.   *Glidden* v. *Reading*, 38 Vt., 52.   So, too, in a late
case, a town was held liable in Massachusetts for damages from
the falling of an unsafe awning which was so built as to extend
over the road and endanger the travel which passed under it : *Day*
v. *Milford*, 5 Allen, 98.   The purpose of the statute is to secure
to the public safe highways.   That purpose may be as effectually
defeated by an obstruction which impedes travel by its frightful
appearance as by one which, if it is hit, will be an obstacle to the
secure passage of the wheels of a carriage.   The land taken for
the highway is taken for the public use as a highway.   The stat-
ute has armed the towns with full authority to interfere with the
appropriation of it to any private use inconsistent with an unem-
barrassed enjoyment of the public easement.   It provides that if
any person " shall erect any encroachment, or make any obstruc-
tion, or put any nuisance upon any highway," the selectmen may
command or cause its removal.   It also provides that no person
shall " wilfully fell any trees, lay any timber, or place any ob-
struction or other nuisance so as to obstruct, *hinder*, or *impede* the
passing in such highway," without being liable to a fine, and also
to the payment to the town, or to any individual, of any damages
sustained by either : Gen. Sts., pp. 204, 205, 206, § 66, § 69, § 71.
These statutes, which are a part of the General Highway Law,
shed some light upon the question of the extent of responsibility
intended to be imposed upon towns with relation to their roads.
It is beyond doubt that the placing of an obstruction upon a pub-
lic way, which, by its frightful appearance or otherwise, would
" hinder or impede passing," might subject the party who made
the obstruction to fine and damages, and, if continued, might sub-
ject the town to indictment or to damages if the cause of an acci-
dent by collision.   It is not easy to see the ground upon which the
town should be entirely exempted from liability for the other and
natural consequence of the obstruction — an accident by fright.   In
*Kelsey* v. *Glover*, 15 Vt., 708, the town was held liable for an
obstruction because it was naturally calculated to, and actually
did, add to the dangerous consequences of the accident from fright.

Would the town have escaped liability if the obstruction by its natural operation had caused the fright instead of merely adding to its evil results ? In many of the cases towns are held liable, although some accident, not the fault of the plaintiff or the defendant, contributes to the accident complained of. *Hunt* v. *Pownal*, 9 Vt., 411. A town may reasonably be held to a higher responsibility, after notice, with reference to the removal of obstructions made by private property unlawfully deposited upon the road — a duty easily performed and under the statute at the expense of the party who caused the obstruction — than with reference to the removal of equally dangerous obstructions which either exist naturally in the soil or are cast upon the margin in the process of working the road, which to a reasonable extent is a legitimate use of the margin. The traveler has reason to expect that the highway will have the ordinary and reasonable encumbrances which arise from the nature of the soil and country, and its being worked and repaired in a proper manner ; but he has no reason to apprehend that the town have suffered these dangers to be increased by allowing the land taken for public use to become unlawfully appropriated to private uses as a place of deposit for property which will in any manner obstruct or impede travel, whether by frightening his horse or clogging his wheels.

The recent decisions of the courts of Massachusetts, for the learning and ability of which we have great respect, *tend* to a different result from the one reached by us : *Keith* v. *Easton*, 2 Allen, 552 ; *Kingsbury* v. *Dedham*, 13 Id., 186 ; *Cook* v. *Charlestown*, Id., 190, 191, n. These cases are strongly relied on by the defense, and we have on account of their authority given the case before us a more extended examination than we otherwise should. But it is to be noticed, that at least two of these cases present such a state of facts as not necessarily to fall within the operation of the rules which we think should govern this case. The daguerrean saloon, which stood upon a carriage by the roadside, in the case of *Keith* v. *Easton*, was, manifestly, not an object " which might reasonably be expected to frighten ordinary horses ;" and the fluttering of loose canvass upon its roof was not the natural operation to be expected from the object. The pile of gravel fifteen

inches high, complained of in *Kingsbury* v. *Dedham*, was that day lawfully and properly placed upon the road, to be spread over its surface in the ordinary course of repairs. It may be questioned how far the reasoning of the court, and it is upon this that the defendants here rely, would in Massachusetts be an authority in a case presenting different elements of fact. It is doubtful whether the injuries, for which towns may be held, can be satisfactorily classified and defined. Each case should stand upon its own facts. The note of the third case, *Cook* v. *Charlestown*, does not state whether the defendants had notice of the obstruction, and the opinion of the court is not reported. It is not, therefore, certain, from the report, that the court there held that, if the dead horse had been negligently suffered by the defendants, after notice, to lie in the street, the defendants would be exempted from liability for an accident which naturally resulted from the obstruction, simply because it was occasioned by fright instead of collision. If, however, such was the decision, the case is as strongly in point for the defendants as any case can be. Such an object as a dead horse in a street would almost inevitably occasion accidents by fright, and would far more endanger and obstruct travel, by its tendency to frighten horses, than by its likelihood to disturb the passage of wheels by collision. In *Lund* v. *Tyngsborough*, 11 Cush., 563, though a new trial was granted, it was held that the plaintiff might recover without proving actual contact with the defect, and although the fright of the horse contributed to the accident; but the recent decision of *Horton* v. *Taunton*, 97 Mass., 266, seems to have qualified this to some extent, for, if a town is not bound to guard against fright, they should not be against its consequences. It may be possible that the courts of Massachusetts have become more inclined to give the defendants in these cases the benefit of any doubt upon the meaning of the statute, from the fact that for a long time the action under their statute was substantially *penal* in its nature—the party injured recovering, if the town had notice of the defect, double damages. Mass. Stat. of 1781, ch. 81, § 7; Rev. Stat. Mass., 1836, ch. 25, § 22. By their statute of 1850, ch. 5, the recovery became limited to actual damages. The liability of towns for injuries by fright,

occasioned by obstructions upon the highway margin, seems in New Hampshire to have been rather assumed as a matter of course, as an unquestionable proposition, than to have been decided as a debatable question of law: *Winship* v. *Enfield*, 42 N. H., 199, 200, 216 ; *Chamberlain* v. *Enfield*, 43 Id., 358, 360 ; *Littleton* v. *Richardson*, 32 Id., 59. In all these cases, the injury occurred by fright at lumber placed upon the road, or its margin. In all of them, the *Nisi Prius* Court held that towns might be liable for damages incurred in that manner. In two of them a new trial was granted for other errors, but in all of them satisfaction was expressed with the ruling below in this respect, though it does not seem to have been questioned in argument. The case of *Dimock* v. *The Town of Suffield*, 30 Conn., 129, was an action for an injury received by the plaintiff's horse taking fright at some white plastering on the margin of the road, piled up, as the case finds, nearly to the height of the road-bed, but so as to be "in no manner an obstruction to the public travel, except so far as it might frighten horses." The point was distinctly made by the defendants, that the town could not be held liable for a defect of that nature. The court, in their opinion, delivered by HINMAN, C. J., say, that whether any duty devolved upon the town with reference to the pile of plastering, "depends upon whether it was in its general operation calculated to frighten horses of ordinary gentleness." He also adds : "There can be no doubt that a road may be rendered unsafe by objects upon it calculated to frighten animals ;" but "whether a slight discoloration by the side of the road, such as was caused in this case by the plastering that lay there, was in fact an object calculated to frighten horses which are usually gentle, and therefore fit to be driven, is an entirely different question." It appeared in that case that the plaintiff's horse was shy and timid, and a decision against the plaintiff was advised, upon the ground that there was "heedlessness amounting to negligence on the plaintiff's part, which was the cause of the injury, and that with the exercise of reasonable care he would have passed the object." It is also said by CARPENTER, J., in *Newison* v. *New Haven*, 7 Am. Law Reg., 783, that "any object upon or near the traveled path, which in its nature is calculated to frighten horses

of ordinary gentleness, being likely to obstruct the use of the way, may constitute a defect in the way itself." The statutes as well as the decisions of Connecticut and New Hampshire, relating to the responsibility of towns for injuries upon the highways, more closely resemble ours than do those of Maine or Massachusetts. We think, that not only the language and purpose of our statutes, and the reason and spirit of our decisions, but also a proper regard to public policy, require us to hold that the defendant town is liable for the natural consequence to the plaintiffs of a negligent failure to remove the obstruction unlawfully deposited in the highway, which " presented such an appearance, that it might reasonably be expected to, and naturally would, frighten ordinary horses." The expression of the court below, that towns are bound to remove from their roads *all* objects calculated to frighten ordinary horses, would be open to criticism if it stood alone. It was, however, necessarily limited and applied to the bales of hay complained of. No other obstruction was in proof, and the remark could not have misled the jury. The result is, the judgment of the county court is affirmed.

WILSON, J., and PROUT, J., concurred. PIERPOINT, C. J., having presided in the court below, and PECK, J., being a tax-payer in the defendant town, did not sit ; but after judgment they expressed their concurrence with the views stated in the opinion. KELLOGG, J., who was upon the bench, and heard the case when first argued, entertained the same views.

BARRETT, J., dissented.*

---

* We have taken the liberty to insert the learned note, by Judge Redfield, which appeared in the report of this case in volume 8, of the American Law Register, p. 81.                                    REPORTER.

We have read the foregoing opinion with more than common interest, because it discusses a point in the law, affecting the responsibility of towns for the condition of their highways, which is of great practical importance, as well to the towns as to the public at large, and in regard to which there seems, of late certainly, a tendency or disposition, in some quarters, to admit considerable relaxation of what has long been considered the established doctrine upon the subject. And we think it must be admitted that the opinion possesses two very essential merits, as a judicial declaration of the law : it follows the established

principles of law upon the subject, both in that state and elsewhere, and defines a course of action and responsibility, which is, at the same time, both safe and intelligible, as well for towns as for travelers upon the highways.

There are two motives which seem to us to have combined to unsettle the law upon this particular question, the responsibility of towns for objects carelessly suffered to remain within the limits of the traveled portion of the highway, calculated to frighten quiet, or ordinarily quiet, and gentle horses : that is, (1) a timid apprehension that towns may thereby become responsible for unreasonable watchfulness, and even ludicrous obstructions to quiet traveling ; and also, (2) in some instances, perhaps, a feeling of love of discovery of some good mode of escape from the embarrassing dilemma.

It can not be denied that both these motives are laudable, and entirely consistent with a high degree of ability and fitness for the wise and judicious administration of justice : but, at the same time, it is undeniable that they have both contributed largely to the production of bad law, and have produced more erroneous decisions than they have ever cured, in a ten-fold proportion.

The case of *Chamberlain* v. *Enfield*, 43 N. H., 356, seems to us to place the question upon its true basis, that it must be regarded as a question of fact for the jury, whether an object outside of the traveled portion of the highway is a defect or obstruction to its safe use, by reason of its liability to frighten horses. There is no valid reason apparent to us why this question may not as safely be intrusted to juries under proper limitations, to be defined and fixed by the courts, as any other questions of fact arising in this class of cases.

There is no question that as the responsibility of towns in such cases is exclusively a statutory one, the courts are bound to a reasonably strict construction in regard to its extent. But, at the same time, it should not be so much restricted as to fail reasonably to secure its object, the maintaining of a safe transit for traveling along the highway. For, notwithstanding some variation in the statutes of the different states, all substantially agree in requiring the municipality to provide and maintain a safe and convenient passage for travelers. This unquestionably primarily applies to the traveled portion of the highway. So that one who for mere convenience, and without actual necessity, departs from the traveled portion of the highway, can not recover for any injury he may sustain thereby, in consequence of obstructions to passage. Such obstructions are not required to be removed from any portion of the laid out highway except that which is prepared for the passage of travelers, as the English call it, the " metalled " portion of the highway.

But it would be a very imperfect view of the subject to conclude that this portion of the highway is all that towns are bound to look after. If that were so, there would be no necessity for taking, and no power to take more land for the use of the highway than is reasonably necessary for making the traveled path. And although it might require the use of the adjacent land, to some extent, in the course of construction and repair, that, being a temporary use, would not require the taking of the land. And, therefore, where towns are allowed to take for the highway from three to six rods in width through its whole extent, it must be concluded that something more is expected than a mere track of sufficient breadth to enable carriages to pass each other. It was, no doubt, intended to

guard against intrusion from the adjoining landowners, and thus protect the traveler, to a reasonable extent, against such sights and noises as might render the passing along the highway embarrassing or impossible. And although it is not possible to guard against all occurrences calculated to frighten teams, this is no reason why the towns and cities should not be responsible for putting, or allowing others to put, the margins of the highway to such uses, more or less permanent, as will discommode or destroy the safe and comfortable use of the traveled portion of the same. For if the margins of the highway may lawfully be put to any and all uses known to modern advancement in manufactures by machinery, there are few horses of such quiet demeanor that they could be trusted to carry a vehicle safely through its clamor and exhibition.

The truth is, no such thing was ever expected or would be for a moment tolerated. No such thing is claimed. But it seems to be supposed by some that while all such operations along the sides of the traveled path in highways are clearly nuisances, and so abatable by the municipal authority, still the traveler has no claim for damages sustained by reason of that acknowledged municipal duty being omitted.

It may be true that some of the statutory provisions in the different states are so defectively drawn as to produce this anomalous result, that while the traveler, without fault on his part, suffers pecuniary damage by reason of the omission of the municipalities to perform their duty in regard to the highways, he is without redress. But it is safe to conclude no such result was intended to follow from the provisions of the statute, and none such should be invited by the courts, on the ground of mere construction. It could only be tolerated upon the ground of strict necessity, as the inevitable result of some defect in the language of such statutes.

There may possibly be some difficulty in defining the precise limits of municipal responsibility for not removing obstructions to the safe use of the highway, when such obstructions do not come within the limits of the traveled path. There would be the greatest embarrassment in laying down any rule of law that would apply with precision to each particular case as it should occur. That would manifestly be impracticable. But it would in our apprehension be a very lame conclusion to make from this acknowledged difficulty, that no obligation could safely be imposed upon the municipalities in regard to such obstructions to safe traveling. The same difficulties exist upon all questions of negligence and duty, until by repeated trials some definite rule is established. It was so in regard to accidental obstructions in the traveled path, until the statute interposed and fixed the time for removal at twenty-four hours. It was so in regard to demand and notice upon negotiable paper, until the convenience of commercial usage fixed the time at one day for each successive endorser to notify his next guarantor.

And with all due submission it has never seemed to us that the argument *ab inconvenienti* or the *reductio ad absurdum*, which is so much resorted to in these cases, was at all satisfactory or conclusive. Because it is not possible to remove all objects which tend to frighten animals passing along the highway, is that any sound reason why one manifestly of that character, and clearly there by intrusion, should not be removed? And if not, can any good reason be assigned

why the municipalities should not be held responsible to travelers for damage resulting from their culpable negligence in not removing the same? Where, therefore, the judge gravely tells the traveler that if his horse is frightened at the sudden appearance of the full moon, or the bursting of a clap of thunder, he is remediless, will it be likely to afford him much of the spirit of acquiescence in the wisdom of the law for allowing a threshing-machine or a wind-mill to be permanently operated within the limits of the highway? The passing of a flock of wild geese so near the ground as to cause a whirr and a rush of air, might possibly frighten some brute animals, or some not entirely so; but to be told that there is no relief, would be but poor consolation, when the man is complaining of a menagerie having taken permanent possession of the highway and thus driving his team mad. It is always possible to put extreme cases, where the traveler might suffer the same damage and be wholly remediless. But unless they are more analogous, in principle, than some which have been called in to foreclose the discussion on this question, there would be slight relief given.

If towns may render the highways unsafe for ordinary use by travelers by the bewildering sights and noises publicly and permanently tolerated upon their margins, there will be slight benefit in having any such margins, or, indeed, in having any highways at all. The case of *Drake* v. *Lowell*, 13 Met., 292, clearly recognizes the principle for which we contend. And we do not so much object to the more recent cases in Massachusetts, where this rule is attempted to be restricted within narrower limits. The case of *Hixon* v. *Lowell*, 13 Gray, 59, where towns and cities were held not responsible for damage resulting from ice and snow falling from the roofs of buildings adjoining the streets, is unquestionably sound, as a general rule. There might possibly occur an exceptional case, where the town or city might be required to remove a mass of overhanging ice or snow, more obstructing to the safe use of the highway than any such ice or snow would be if actually fallen upon the track. It might present a case for the jury, as in *Luther* v. *Worcester*, 97 Mass., 268. But in such case, it might be regarded mere foolhardiness for the traveler to venture upon such imminent peril, and so preclude a recovery on that ground. But clearly highway travelers are not bound to watch the snow and ice upon the roofs of buildings adjoining the highways. And in *Keith* v. *Easton*, 2 Allen, 552, where the town was held not responsible for the result of fright to horses, caused by a daguerrean saloon along the margin of the highway, the decision may be sound, but we should have deemed it a case of such doubt as to be submitted to a jury, as was done in the principal case. We trust the courts will not be so much alarmed at the outcry against juries in finding towns responsible for damage to travelers upon the highway, as to adopt constructions virtually repealing the statutes affording redress in such cases, for the remedy is needed, and jurors, if properly instructed by the courts, will be sure to render safe verdicts.

Since preparing the foregoing, we are gratified to learn that the Supreme Judicial Court of New Hampshire, in the case of *Bartlett* v. *Hooksett*, have sustained the same view for which we contend, in opposition to that adopted in Massachusetts in the cases already referred to, and the later ones of *Kingsbury* v. *Dedham*, 13 Allen, 186, and *Cook* v. *Charlestown*, Id., 190, in note. The point ruled in the New Hampshire case was, that objects suffered to remain

resting upon one spot, or confined within one particular space within the highway, if they are of such a shape or character as to be manifestly likely to frighten horses of ordinary gentleness, constitute "obstructions" or "insufficiencies," for which the town is liable. The obstruction here was a pig-sty projecting into the highway and occupied by five swine, the declaration alleging that the horse was frightened by the swine "starting and running about," and by certain loud noises which the swine then and there uttered.

It is not improper, we trust, for us to say that this adherence to the former rule upon this important subject, by a court of so much weight of authority, is gratifying upon more than one account. It gives hope that the frequency of this class of actions and the tendency with juries to hold the municipalities responsible, will not have the effect to lead all courts to so far restrict the extent of that responsibility by constructions as to virtually destroy the beneficial effects of the statutes upon the subject. And we trust it may not be regarded as entirely inadmissible to say that it affords great support to one traveling down the western declivity of life to find some assurances, as he passes along, that all the lights of his life have not become extinguished before he reaches his journey's end.

I. F. R.