# THE CITY OF CHICAGO

## *v.*

## MICHAEL HOY.

1. NEGLIGENCE — *by city in removal of dead animals.* An object in a public street calculated to frighten horses, such as a dead animal, is such an obstruction as makes the corporation liable in case of an accident, resulting in injury, happening in consequence thereof.

2. Where a horse died in a public street of a city about 2 o'clock P. M., and the fact that the dead body was left in the street was known to a policeman of the city that night, and on the next day about 3 o'clock P. M., the plaintiff, while driving along the street, without negligence on his part, was injured in consequence of his horse taking fright at the dead animal, it was *held,* that the city was liable to him for the injury.

3. MUNICIPAL CORPORATION — *duty to remove obstructions in streets.* It is the duty of a municipal corporation, such as a city, to exercise reasonable care and diligence in the removal of dead animals or other objects in a public street, calculated to frighten horses, after actual notice of the same ; after the lapse of such a time that it should, by the exercise of reasonable diligence, have had knowledge thereof, actual notice may be presumed.

4. EXCESSIVE DAMAGES. In a suit against a city, to recover damages from neglect to remove a dead animal from a public street, which frightened the plaintiff's horse as he was driving along the street, and caused him to run away and throw the plaintiff and his wife from the buggy in which they were riding, inflicting some bodily injury on the plaintiff and injuring his wife, so that the plaintiff necessarily incurred an expense of $75, physician's bill for attending on her, and was compelled to hire a girl to do house work at $3 per week, and the proof showing her board worth $3 per week, making $411 expense of the girl, and that the cost of repairing the wagon and harness was $35, it was *held,* that $800 damages, in a suit by the plaintiff against the city, were not so manifestly excessive as to call for a reversal of the judgment.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. EGBERT JAMIESON, for the appellant.

Messrs. BRANDT & HOFFMAN, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action on the case, brought by Hoy, the appellee, against the city of Chicago, to recover for damages sustained in consequence of an obstruction in a street of the city.

The obstruction consisted of a dead horse, which had died in the street from colic, the property of some hackman. Hoy was driving his horse and wagon along the street, accompanied by his wife, and his horse, on coming to where the dead horse lay, took fright thereat, and became unmanageable, and ran away, upsetting the wagon, and throwing Hoy and his wife violently upon the ground, injuring them and the wagon and harness. The cause was tried by the court, without a jury, who found the issue for the plaintiff, and assessed his damages at $800, and rendered judgment therefor, and defendant appealed to this court.

There can be no question that an object in a public street, which is calculated to frighten horses, is such an obstruction as makes the corporation liable in case of an accident hap-

pening in consequence thereof. Shearm. & Redf. on Negligence, 445; *Winship* v. *Enfield*, 42 N. H. 217; *Dimock* v. *The Town of Suffield*, 30 Conn. 132.

This is not disputed; but the points made by appellant are, that there was no negligence on the part of the city, in respect to the removal of the obstruction; that the plaintiff, at the time of the accident, was not in the exercise of due care and caution ; and that the damages are excessive.

The obstruction arose without fault or negligence on the part of the corporation, and the inquiry must be, whether there was negligence in the suffering it to remain so long a time as it did without removal.

The evidence showed that the horse died on the 19th of August, 1872, at about 2 o'clock P. M.; that the accident occurred the day after, the 20th, at about 3 o'clock P. M.; and that the dead animal was removed some time afterward, in the same afternoon.

The place where the animal lay was at the intersection of Jackson and Halstead streets, about the centre of Jackson street, in the line of the sidewalk, on the west side of Halstead street, so that persons passing along this sidewalk were obliged to turn out of the line of the sidewalk, and walk around the horse— Jackson street running east and west, and Halstead north and south. There was considerable travel on Jackson street, and Halstead was very much traveled.

The driver of the horse that died was arrested by a police officer on the 19th of August, and tried in the police court on the 20th. The matter of the removal of dead animals in the city is assigned to the board of health. The board had previously made a contract with the Union Rendering Company for the removal of all dead animals found in the streets. The board also place in the police stations a book, in which are to be entered all animals found dead in the streets, yards and alleys. It is made the duty of the police to report and enter in this book all dead animals discovered by them, and every morning a

health officer comes around and examines this book, and all re-ported cases are by him transferred to a book kept for that pur-pose, which is then examined by the agent of the Union Render-ing Company, who, when he so receives notice that an animal is lying dead in the street, etc., takes steps for its removal.

The policeman, Smith, whose " beat " was in this vicinity, and who had the " night beat," testified that he first saw the dead horse in the night of August 19, 1873, and that he reported the same in the board of health book at the Madison street police station, at 6 o'clock in the morning, August 20th, 1873. The witness McGoughigan, the agent of the Union Rendering Com-pany, testifies that he called at the health-office on the morning of August 20, 1873, between ten and twelve o'clock, and found the notice, and removed the horse about 2 o'clock P. M. of that day. Other witnesses say about 5 o'clock.

The duty incumbent on the city was, to exercise reasonable care and diligence in the removal of the animal after it had actual notice that it was lying in the street, or after the lapse of such a space of time that it should have had knowledge thereof, when actual notice may be presumed. The proof suf-ficiently shows notice in this case, and that it was some time afterward when the accident occurred. A nuisance of such a character, in such a place, and at such a time of year, would call for greater promptness in its removal than might be required in some other cases. Upon consideration of the evidence, we are not prepared to say that the court below erred in finding that the horse was suffered to lie an unreasonable length of time after notice ; and that the city, after such notice, did not use proper care and diligence to have had the removal made before the time when the accident happened, and that, conse-quently, there was negligence.

As respects the plaintiff, Hoy, he was driving along Jackson street east, on a walk, in conversation with his wife, and did not discover the dead horse until his own horse shied off, on coming quite near to it.

The accident was not caused by coming in contact with the dead horse, and we see no such negligence in the conduct of Hoy as should preclude him from recovering.

As regards the damages, Hoy himself received some bodily injury, but no pecuniary loss therefrom is shown. His wife was very seriously injured. During the first two months after the accident, he testifies he paid out $75 for medical attendance on her, and since then, at intervals, she has required such attendance. The accident happened August 20, 1872. The case was tried December 13, 1873. Hoy testified, that ever since the accident, he had to keep a hired girl to do the housework, formerly done by his wife; had paid the girl $3.00 a week, besides her board, and that that was worth $3.00 a week. Counting the wages and board of the girl at $6.00 a week, Hoy had paid out, up to the time of the trial, some $411 for the girl. Adding to this, $75 paid for the doctor's bill for the first two months, and $35 for repairs of the wagon and harness, the amount is $521.

The evidence shows a probability that there will be future accruing like expenses as respects a girl and physician.

We do not think the damages are manifestly so excessive as to call for interference with the finding of the court. The judgment will be affirmed.

*Judgment affirmed.*