# DISTRICT OF COLUMBIA *v.* MOULTON.

MUNICIPAL CORPORATIONS; HIGHWAYS; NEGLIGENCE; CONTRIBU-
    TORY NEGLIGENCE; INSTRUCTIONS TO JURY.

1. It is the duty of the Commissioners of the District of Columbia to
   keep the public ways of the city of Washington in a reason-
   ably safe condition for public travel, and the neglect of the
   Commissioners in that respect is the neglect of the munici-
   pality.

2. Where an ordinarily gentle horse becomes frightened at an object
   in the street naturally calculated to frighten horses—such as
   a disabled steam roller—which the municipality, by its agents,
   has negligently permitted to be placed and has allowed to
   remain in the street, and an injury results without contribu-
   tory negligence, the municipality will, as a general rule, be
   liable for such an injury, even though such object may not be
   within the traveled way of the street, and the horse and
   vehicle may not have come in actual contact with the object
   of fright.

3. Where suit is brought against the municipality for an injury so
   caused, the burden of proof is on the plaintiff to show that
   the horse frightened was in fact one of ordinary gentleness
   and tractability and easily subject to control; and in a
   doubtful case a recovery should not be allowed against the
   municipality.

4. In such a case, the care required of the person injured in the
   sudden emergency under which he is required to act, is such
   as would have been exercised under like circumstances by an
   ordinarily prudent and careful man.

5. In such a case, where the steam roller which frightened the horse
   had been allowed to remain in the street in a disabled con-
   dition for a day or two before the accident to the plaintiff, it
   is a question of fact for the jury and not one of law for the
   court, whether that time was a reasonable time for the roller
   to have been allowed to remain in the street.

6. Where such an accident was caused by the sudden fright of the
   horse, which could not have been anticipated by the plaintiff,
   from his previous knowledge of the animal, prayers for in-
   struction to the jury offered by the municipality are properly
   rejected, which ask that the jury be instructed that the fact of
   the plaintiff seeing the steam roller and thus becoming in-
   formed of its position before the accident occurred, dispensed

with the necessity of any other notice of the position of the
roller; and that if the roller was on the street for the purpose
of being used in the work of repairing the street, then the
roller was in no sense a defect or obstruction; and if the
plaintiff saw it in time to have avoided it by going down
another street, but instead, attempted to pass it and in so
doing his horse became unmanageable and overturned the
carriage and threw the plaintiff out, then the plaintiff was
guilty of negligence and not entitled to recover.

No. 909.   Submitted October 12, 1899.   Decided November 8, 1899.

HEARING on an appeal by the District of Columbia from
a judgment of the Supreme Court of the District of Colum-
bia upon the verdict of a jury in an action to recover dam-
ages for personal injuries.   *Affirmed.*

The COURT in its opinion stated the case as follows:

This action was brought to recover for personal injuries
received by the plaintiff, Hosea B. Moulton, the present ap-
pellee, by reason of alleged negligence of the defendant, the
District of Columbia, the present appellant, in allowing an
improper obstruction in one of the streets of the city of
Washington, causing the horse of the plaintiff to become
frightened and unmanageable, resulting in the throwing
the plaintiff out of his carriage down upon the street, pro-
ducing the injury complained of.   The case was tried upon
the general issue plea of not guilty as alleged, resulting in
a verdict and judgment for the plaintiff, and the defendant
has appealed.

The facts are not numerous or conflicting, except with re-
spect to one or two particulars; there is some conflict in the
testimony of the witnesses, though not of a very material
character.   This conflict of evidence relates principally to
the defense of contributory negligence of the plaintiff to the
injury suffered by him.

It appears from the evidence, as stated in the bill of ex-
ceptions, that on November 26, 1896, being Thanksgiving
day, at about 3 o'clock in the afternoon, the plaintiff set

out for a drive in a one-horse carriage with his family, consisting of his wife and child, who occupied the front seat of the vehicle with him, his wife's sister and her child, and his wife's mother, all three of whom occupied the rear seat in the carriage. As the party approached the vicinity of the intersection of Park and Pine streets northwest, driving along Park street, the plaintiff saw in front of him a large steam roller, which had been left on the south side of Park street, a short distance west of Pine street, and standing as near the south side curb as it could well be placed. It is shown by the evidence, that about the time the plaintiff reached the middle of Pine street on Park, the horse suddenly took fright at the machine, or something about the machine, and almost immediately became unmanageable, and would not go past the machine. He reared and backed, and in suddenly turning around one of the wheels of the vehicle was crushed, the vehicle was overturned, and the plaintiff was thrown out on Park street, four or five feet east of Pine street, and his head was struck upon the street, and was seriously injured. According to the evidence, the horse was quite gentle, and had been driven by the plaintiff for some three years without accident, and had been driven past steam rollers when in operation without becoming frightened.

It appears that the roller had been used for repairing Park street for a week or so before the accident, but having broken down, it was not in use on the day of the accident. It broke down a day or two before the day of the accident, and it was thereupon left on the street, as before stated, though it was removed therefrom the same evening after the accident. Its position at the time of the accident was about fifty feet west of Pine street; and Park street, at that point, is forty feet wide from building line to building line, and, deducting the width of six feet of pavement, for sidewalk, on each side of the street, the width of the roadway, where the roller stood, was only about twenty-eight feet.

The roller, it appears, was of the kind generally used in constructing macadamized roads. It had three wheels, the tread of the rear wheel being about eight feet; it was about eight feet long and about five or six feet high. The smoke-stack was only a little higher than the other part of the machine. At the time of the accident it had no fire in it.

There is some conflict of evidence, though not very material, as to the time that the roller had been allowed to stand on Park street after it had broken down, and before the accident occurred. This, however, was matter of fact that was allowed to be passed upon by the jury.

Upon the whole evidence, the court granted three special instructions on request of the plaintiff (which will appear at large in the case as reported), and of fourteen prayers offered for instruction by the defendant, the court, by consent of the plaintiff, granted the second, third, fourth, fifth and sixth of said prayers, and refused the others. And to the granting of the instructions prayed for by the plaintiff, and to certain portions of the general charge by the court to the jury, and to the rejection of the prayers offered by the defendant, the defendant excepted. And it is upon these exceptions that the case is presented to this court.

[The three special instructions requested on behalf of the plaintiff, all of which were granted, were as follows:

"1. The jury are instructed that if they find that the steam roller referred to in the evidence was allowed by the defendant or its agents to stand on Park street a short distance west of Pine street on the 26th day of November, 1896, prior to the occurrence of the accident in which the plaintiff was injured on that day.; that said steam roller so standing at that place was an object likely to frighten reasonably gentle horses properly handled going along said Park street; that the plaintiff's horse was a reasonably gentle horse, and that at and before the occurring of the accident in question it was prudently and carefully handled and managed; that

the overturning of the vehicle in which the plaintiff was riding at the time in question was not the result in any part of contributory negligence on the part of the plaintiff; and that the defendant or its agents in charge of said steam roller negligently allowed said steam roller to remain at said point for an unreasonable length of time without taking reasonable precautions to avoid the occurrence of accidents from the frightening of horses by said steam roller, and that the overturning of said carriage was caused solely by such negligence on the part of the defendant or its agents in charge of said roller, then their verdict should be for the plaintiff.

"2. The jury are instructed that if they find from the evidence that the plaintiff's horse was frightened at the steam roller and in consequence became unmanageable the moment or almost immediately before the accident occurred, the law does not require in order to free him from the charge of contributory negligence that it should appear he pursued the safest and best course in what he did to avoid having his vehicle upset. Even if the jury should find from the evidence that in the presence of sudden and imminent danger the plaintiff made a mistake in not stopping at the first indication of restiveness on the part of the horse he was driving, or in not endeavoring to turn round and go back on Park street, they would not be required to find from those facts alone that he was guilty of contributory negligence. To reach that conclusion they should further find that an ordinarily prudent and careful man under like circumstances would not have acted as Mr. Moulton did.

"3. The jury are instructed that if their verdict be for the plaintiff, they should allow him: First, reasonable compensation for the physical pain and mental anguish which he has sustained in the past and for that which the jury may find from the evidence he is likely to endure in the future, as the direct result of the injuries received by him

at the time of the accident in question; and, second, the amount of pecuniary loss, if any, which the jury may find from the evidence he has sustained in consequence of said injuries by being rendered less able to earn money in the practice of his profession, and also such pecuniary loss of the same kind, if any, as the jury may find from the evidence he is likely to sustain from said cause in the future."

The instructions requested on behalf of the defendant, both those granted and those refused, are sufficiently set forth in the opinion of the court.—REPORTER.]

*Mr. Andrew B. Duvall,* Attorney for the District of Columbia, and *Mr. Clarence A. Brandenburg,* Assistant Attorney, for the appellant:

1. The presence of the steam roller in Pine street was not an actionable obstruction thereof. A city has the right to use any proper implement, even run by steam, for the purpose of constructing or repairing its streets, and, in the absence of carelessness or negligence in its management, it is not liable for damages occasioned by a horse becoming frightened thereat. *Sparr* v. *St. Louis,* 4 Mo. App. 572; *Macomber* v. *Nichols,* 34 Mich. 212; *Lane* v. *Lewiston,* 39 Atl. Rep. 999; *Dist. of Col.* v. *Ashton,* 14 App. D. C. 571. The steam roller was not *per se* an object calculated to frighten horses of ordinary gentleness. Judicial notice will be taken of whether an object is of that character. The question is not a question for the jury. *Gilbert* v. *Railway Co.,* 51 Mich. 488; *Keith* v. *Easton,* 2 Allen, 552.

The plaintiff's carriage did not come in contact with the steam roller; his horse was frightened by its presence. If the horse of a traveler becomes frightened at an object in the highway which is an obstruction and defect therein, and with which, but for his fright, he would not have come in contact, and by reason of such fright, without coming in contact with it, runs away and overturns the carriage at a place where there is no defect, the city or town is not liable

for injury so sustained by the traveler.    *Cook* v. *Charlestown,*
98 Mass. 80 ; *Agnew* v. *Corunna,* 55 Mich. 428 ; *Cain* v. *Tel.
Co.,* 47 S. W. Rep. 759 ; *Commrs.* v. *Rickel,* 106 Ind. 501 ;
*Titus* v. *Northbridge,* 97 Mass. 258 ; *Kingsbury* v. *Dedham,* 13
Allen, 186.    City authorities are bound to keep in repair
only such streets and parts of streets as are necessary for the
convenience and use of the traveling public, and where at
the point of the accident the street was abundantly wide
and well repaired to enable persons, with the exercise of ordi-
nary care, to avoid the injury, the city will not be responsible
merely from the existence of a defect in the untraveled por-
tion of the street.    *Brown* v. *Mayor,* 57 Mo. 156 ; *Perkins* v.
*Fayette,* 68 Me. 152.

2. The plaintiff was guilty of contributory negligence.
With full knowledge of the presence of the steam roller in
the street, he deliberately undertook to pass it.    He had
ample time after notice of its presence, indeed, after his
horse showed indications of fright, to change his course.
One can not assume a position of danger and then com-
plain of injury from negligence which could cause no injury
except to one in that dangerous position.    *Railroad Co.* v.
*Jones,* 95 U. S. 439 ; *Railroad Co.* v. *Houston,* 95 U. S. 697 ;
*Schoefield* v. *Railroad Co.,* 114 U. S. 615.

This court has held a plaintiff guilty of contributory neg-
ligence which disentitled him to recover where he had
knowledge of the dangerous condition of a street and pur-
sued his course thereon in preference to taking another
street, which he could have done with safety, although with
inconvenience.    *Dist. of Col.* v. *Brewer,* 7 App. D. C. 113.
The appellee can no more recover in this case than one
who, knowing the defective condition of a sidewalk, ven-
tures upon it without taking precaution necessary to prevent
a fall.    *Aurora* v. *Brown,* 11 Ill. App. 122; *Mayhew* v.
*Burns* (Ind.), 2 N. E. R. 793 ; *Erie* v. *Magill,* 101 Pa. St. 616 ;
*Schaefler* v. *Sandusky,* 33 Ohio St. 246 ; *Wilson* v. *Charlestown,*
8 Allen, 137 ; *Parkhill* v. *Brighton,* 61 Iowa, 103; *Cook* v.

*Johnson,* 58 Mich. 437; *Black* v. *Manistee,* 107 Mich. 60; *Grandorf* v. *District,* 113 Mich. 496.

3. Under the circumstances of this case, the court should have instructed the jury that the plaintiff was required to exercise special care and caution in order to avoid the risk of accident. *Dist. of Col.* v. *Ashton, supra; Jacob* v. *Bangor,* 16 Me. 190.

4. Under the circumstances of this case, the question of whether the roller was allowed to remain in the street an unreasonable time was one of law, and should not have been left to the jury. *Wiggins* v. *Burkham,* 10 Wall. 129; *Nunez* v. *Dauntel,* 19 Wall. 560; 19 Am. & Eng. Encyc. Law, 640.

*Mr. A. S. Worthington* and *Mr. Charles L. Frailey* for the appellee:

1. When a municipal corporation permits an object naturally calculated to frighten horses of ordinary gentleness to remain within the limits of a highway maintained by the corporation, for an unreasonable length of time, and an accident happens by reason of a horse becoming frightened at such object, the town or city is liable to an action for damages therefor, even though the object be so far removed from the traveled path as to avoid the danger of collision with it, the plaintiff in such case being, of course, in the exercise of due care. *Hughes* v. *Fond du Lac,* 73 Wis. 380; *Foshay* v. *Glen Haven,* 25 Wis. 288; Dillon on Mun. Corp., II, Sec. 1011; *Halstead* v. *Warsaw,* 59 N. Y. Supp. 518; *Card* v. *Ellsworth,* 65 Me. 547; *Chicago* v. *Hoy,* 75 Ill. 530; *Manheim* v. *Arnold,* 119 Pa. St. 380; *Ayer* v. *Norwich,* 39 Conn. 376; *Morse* v. *Richmond,* 41 Vt. 435; *Dimmock* v. *Suffield,* 30 Conn. 129; *Rushville* v. *Adams,* 107 Ind. 475; *Little* v. *Madison,* 42 Wis. 643; *Clark* v. *Lebanon,* 63 Me. 393; *Turnpike Co.* v. *Bateman,* 68 Md. 389; *Young* v. *New Haven,* 39 Conn. 435.

That what is an unreasonable length of time in such cases

is a question of fact for the jury is also supported by the following cases: *Young* v. *New Haven,* 39 Conn. 435; *Ayer* v. *Norwich,* 39 Conn. 376; *Cairncross* v. *Pewaukee,* 78 Wis. 66.

2. The question of contributory negligence was properly presented to the jury in the instructions granted by the court. *Railway Co.* v. *McDonald,* 152 U. S. 262; *Railroad Co.* v. *Hickey,* 5 App. D. C. 436.

The fact of the reasonableness of what the appellee did was for the jury, and they were warranted by the testimony in finding that he did what an ordinarily prudent man would have done, because, while many other horses were frightened by the roller, they all got safely by. *Tucker* v. *Henniker,* 41 N. H. 317. But Park street was made to travel on, and he had a right to be upon it, and to continue his journey over it, using reasonable caution thereon. *Dist. of Col.* v. *Haller,* 4 App. D. C. 405.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

By the Act of Congress of February 21, 1871, (the portion whereof that constitutes Sec. 77, R. S. D. C.), it is provided that the Board of Public Works, now the Commissioners of the District, "shall have entire control of and make all regulations which they shall deem necessary for keeping in repair the streets, avenues, alleys," etc. And with respect to the Commissioners of the District, having such full and complete control of the streets, it has been held, and it is now settled, that they are under a duty to keep the public ways of the city in such condition that they can be used with reasonable safety. "Their neglect in that matter is the neglect of the municipal corporation of which they are the responsible representatives, although subject to the paramount authority of Congress." *District of Columbia* v. *Woodbury,* 136 U. S. 450, 455, 456.

In defining the special circumstances under which a municipality like the District of Columbia may be held liable for personal injuries received by a passenger or traveler,

or injury to personal property, as the consequence of a horse
taking fright from an object allowed to remain within the
limits of a street of a city, calculated to produce fright of a
horse of ordinary gentleness and tractability, has been the
subject of difficulty with the courts, and in regard to which
the courts of the country are far from being in entire ac-
cord.   Indeed, by some of the State courts of high author-
ity, the principle of liability of the municipality for the
consequences of fright to horses in the streets of the city
has been denied.   This would seem to be the case in the
Supreme Judicial Court of Massachusetts, and in some other
of the State courts following the decisions of the Supreme
Court of Massachusetts.   But the great weight of authority
is the other way, and in support of the principle of liability
of the municipality.   According to the principle of the
great majority of cases, if an object calculated to produce
fright of a horse of an ordinary gentle character be allowed
to remain in a street an unreasonable length of time, such
object will be regarded as a nuisance and an undue obstruc-
tion of the travel of the street.

But where injury occurs from such cause, in order that
liability attach thereupon, it must clearly appear that there
is a concurrence of both injury and wrong, the latter being
the cause of the former.   If a party does an act that is not
unlawful in itself he can not be held responsible for any
resulting injury, unless the act be done at a time or in a
manner or under circumstances which render the party
chargeable with a want of proper regard for the rights and
safety of others.   In such case the negligence imputable to
the party doing the act constitutes the wrong, and such party
is accountable to persons injured, not because damage has
resulted from the doing of the act, but because, the act hav-
ing been done negligently or without due care, it has re-
sulted in injury.   If the act was not wrongful in itself, the
wrong must necessarily be sought for in the time or manner
or circumstance under which it was done, and injury does

not prove the wrong, but only makes out the case for redress after the wrong is established. *Macomber* v. *Nichols,* 34 Mich. 212. In this case there can be no question of the lawfulness of the use of the roller in the repair of the street, and of its being allowed to remain on the street such reasonable time after it became disabled, as would be required to enable the defendant or its agents, by the exercise of reasonable diligence, to remove the machine out of the way. The alleged non-exercise of such reasonable diligence is the gravamen of this case.

Now, supposing the roller to have been an object naturally calculated to produce fright in a horse of an ordinary gentle character, and that it was allowed to remain in the street for an unreasonable time after it became disabled and before the accident, and that it did produce fright of the horse and caused the accident without contributory negligence on the part of the plaintiff, it would seem to be clear the defendant became liable for the resulting injury to the plaintiff. For it is now settled, by a great preponderance of authority that where a horse of ordinary gentleness and tractability becomes frightened at an object naturally calculated to frighten horses, which the municipal agent or superintendent has negligently placed, or permitted to be placed and allowed to remain in a street or highway of the city, and injury results, without contributory negligence, the municipality will, as a general rule, be liable for such injury. And this liability extends, according to the great weight of authority, to objects on the margin of the street or highway and within its limits, although such object may not be within the traveled way of such street, and the horse or vehicle may not come in actual contact with the object of fright. The object, however, must be of such a nature as to be *naturally calculated* to frighten horses of *ordinary· gentleness,* and it is incumbent upon the plaintiff to make it clearly appear that the object in the street was calculated to produce fright in a horse of ordinary gentleness, and that the

horse frightened was in fact one of ordinary gentleness and easily subject to control; for it is not against capricious and fractious horses that the municipality is required to guard. The *onus* of these facts is upon the plaintiff, and in a doubtful case a recovery ought not to pass against the municipality. It is only where there is a plain and obvious neglect of duty on the part of the municipal agents that liability can arise in such cases as the present. *Ring* v. *Cohoes*, 77 N. Y. 83 ; *Hay* v. *Philadelphia*, 81 Penna. St. 44 ; *Young* v. *City of New Haven*, 39 Conn. 425 ; *Ward* v. *North Haven*, 43 Conn. 148 ; *City of Chicago* v. *Hoy*, 75 Ill. 530 ; *Morse* v. *Richmond*, 41 Vt. 435 ; *Bartlett* v. *Hooksett*, 45 N. H. 18 ; *Rushville* v. *Adams*, 107 Ind. 475 ; *Foshay* v. *Glen Haven*, 25 Wis. 288 ; *Hughes* v. *Fond du Lac*, 73 Wis. 380 ; *Bennett* v. *Fifield*, 13 R. I. 139 ; *Ayer* v. *City of Norwich*, 39 Conn. 376 ; *Card* v. *City of Ellsworth*, 65 Me. 547. And among the cases that we have just cited, may be found cases where the objects in the streets which produced fright of the horses, were steam rollers, dead horses, boulders, and other objects naturally calculated to startle and produce fright of a horse, and which were found, under the circumstances of those cases, to be an undue obstruction of the street.

The cases upon the subject have been clearly summarized by the text-writers of authority, and by none more clearly than by Judge Dillon in his work on Municipal Corporations. In Vol. 2, Sec. 1011, the author says: "An object in a public street calculated to frighten horses, such as a dead animal, is such an obstruction as may make the corporation liable in case of an accident resulting in injury, happening in consequence thereof, if it is allowed to remain in the street for an unreasonable time. Thus, where a horse died in a public street of a city about 2 o'clock P. M., and the fact that the dead body was left in the street was known to a policeman of the city that night, and on the next day, about 3 o'clock P. M., the plaintiff, while driving along the street, without negligence on his part, was injured in conse-

quence of his horse taking fright at the dead animal, the city, under the circumstances, was held liable to him for the injury. Where there is a defect or object in a street which is calculated to frighten horses and an injury occurs by reason thereof without the fault of the driver, the corporation is liable; but objects outside the traveled way, and not near enough to the line of public travel to interfere with or incommode travelers, are not defects in the highway. It is not requisite, as we have already seen, that a highway, in its whole width as located, should be fitted for travel. It is sufficient if it be of suitable width and in good condition for the needs of the public." And for this text the author has cited a large number of decisions.

In view of the principles that would seem to be so amply supported by authority, we think the court below committed no error in granting the three special instructions on the request of the plaintiff. The first of these instructions is clearly within the principle of the authorities we have cited; and the second, relating to the principle of contributory negligence applicable in such case, would seem to be altogether free from objection. It is fully within the principle of the authorities upon the subject, and particularly the cases of *Railroad Company* v. *McDonald,* 152 U. S. 262, 281, and *Railroad Company* v. *Hickey,* 5 App. D. C. 436, 471. All that could have been required of the plaintiff in the sudden emergency that arose and under which he was required to act, was that he should have acted as an ordinarily prudent and careful man would have acted under like circumstances; and this was the standard of care that the jury were required to find that directed the conduct of the plaintiff at the occurrence of the accident.

With respect to the third special instruction given at the instance of the plaintiff, that relating to the measure of damages, we do not understand that instruction to be the subject of the assignment of any supposed error. It would seem to be free from any substantial ground of objection.

We come now to consider the prayers for instruction offered by the defendant. And with respect to the first, the eleventh, twelfth, thirteenth and fourteenth of those prayers, they were each and all properly refused, as they denied the right of the plaintiff to recover, under the pleadings and evidence. As to the second, third, fourth, fifth and sixth of the defendant's prayers, they were severally granted by the court, with the consent of the plaintiff. They are therefore only important to be noticed, as showing the grounds, and the extent of the matters of defense, that were submitted to the jury.

By the second of the defendant's prayers thus granted, the jury were instructed that if they believed that the plaintiff by his own negligence directly contributed in any degree to the injury complained of, they should find for the defendant. By the third of these prayers, the jury were instructed that the defendant is not an insurer against accidents upon its streets, and it can only be held liable upon proof of negligence as alleged in the declaration. By the fourth of said prayers, the jury were directed that the burden of proof was upon the plaintiff to show by a preponderance of the evidence that the accident whereby he was injured was the result of negligence on the part of the defendant as alleged in the declaration; and if the jury should find that such evidence was consistent equally with the existence or non-existence of such negligence on the part of the defendant, the plaintiff could not recover, and the verdict should be for the defendant. By the fifth prayer, the jury were directed that if they should believe from the evidence that the plaintiff, by the exercise of such care, prudence and caution as a reasonably prudent person would have exercised under similar circumstances, might have avoided the injury suffered by him, then he could not recover, and the verdict should be for the defendant. And lastly, that the jury were not at liberty to presume negligence on the part of the defendant from the mere happening of the accident.

These propositions were all given to the jury as instructions from the court; and when taken in connection with the instructions given at the instance of the plaintiff, the case would appear to have been very fully placed before the jury in all its aspects; and that too as favorably to the defendant as the facts of the case would warrant.

The seventh, eighth, ninth and tenth prayers of the defendant presented propositions not within the principles hereinbefore stated, and they were therefore properly refused. By the seventh prayer, the court was asked to hold and declare that the time which the roller was allowed to remain on Park street, in its disabled condition (according to the assumption of the prayer), before the happening of the accident, was not an unreasonable time for it to remain there; and the allowing it so to remain did not constitute negligence on the part of the defendant. The time and the circumstances under which the roller was allowed to remain upon Park street after it was broken, were sought by this prayer to be made a question of law, to be decided by the court; and thus to withdraw the question of negligence from the jury as matter of fact. In rejecting this prayer, we think the court committed no error.

By the eighth prayer, the defendant asked that the jury be instructed that the fact of the plaintiff seeing the roller, and thus becoming informed of its position, before the accident actually occurred, and in time to have avoided the accident, dispensed with the necessity of any other notice of the position of such roller; and by the ninth prayer, the request was that the jury be instructed that if the roller was, at the time of the accident, on Park street for the purpose of being used in the work of repairing that street, then the roller was in no sense a defect or obstruction; and if the plaintiff saw it in time to have avoided it by going down another street, but, instead thereof, attempted to pass the roller, and in so doing his horse became unmanageable and overturned the carriage and threw the plaintiff out,

then he was guilty of negligence, and was not entitled to recover, and the verdict should be for the defendant.

These prayers assumed that the plaintiff knew or ought to have known, or had good cause to believe, that his horse would become unmanageable and would refuse to be driven past the roller. This knowledge, however, he could not be charged with in anticipation of the conduct of the horse and the happening of the accident; and especially not as he had reason to rely upon the gentleness and manageable character of his horse. It was the sudden fright of the horse that produced the accident, and which could not have been anticipated from his previous knowledge of the horse. These prayers were properly refused.

The tenth prayer presents a proposition in regard to which there has been some diversity of opinion, and especially in the later cases in the Massachusetts Supreme Court, and some other courts. By this tenth prayer the court was asked to instruct the jury, that if the plaintiff's horse or carriage *did not come in contact* with the steam roller on Park street, but that the horse was frightened by it, became unmanageable, and overturned the carriage at a point in Park street, some distance from the roller, where the street was safe, then the plaintiff is not entitled to recover, and the verdict must be for the defendant.

The great weight of authority is so decided against this proposition that we can have no hesitation in saying that the court below was right in refusing the prayer as an instruction. We have already referred to many of the cases upon this subject, and which hold that the municipality is liable for an injury occasioned by the fright of a horse at an object within the limits of a street or way, although neither the horse nor the carriage came into contact with the object producing the fright. *Bartlett* v. *Hooksett,* 48 N. H. 18; *Morse* v. *Richmond,* 41 Vt. 435; *Ayer* v. *Norwich,* 39 Conn. 376; *Card* v. *City of Ellsworth,* 65 Me. 547; *Foshay* v. *Glen Haven,* 25 Wis. 288; *Town of Rushville* v. *Adams,* 107 Ind. 475.

This tenth prayer, therefore, was properly rejected.

We have carefully examined the general charge to the jury by the court below, and we find nothing therein inconsistent with the principles embodied in the special instructions granted at the instance of the respective parties; and nothing in any part of the charge to which valid exception could be taken.

It follows that the judgment appealed from must be affirmed; and it is so ordered.

*Judgment affirmed.*